**COYLE LINES Inc. et al. v.
UNITED STATES et al.**

Civ. A. No. 4072.

United States District Court
E. D. Louisiana,
New Orleans Division.

Sept. 25, 1953.

ter Caven, Austin, Tex., for intervening plaintiffs Texas & N. O. R. Co. and Missouri Pacific Lines.

Stanley N. Barnes, Asst. Atty. Gen., James E. Kilday, John H. D. Wigger, Sp. Assts. to Atty. Gen., George R. Blue, U. S. Atty., M. Hepburn Many, Asst. U. S. Atty., New Orleans, La., for defendant United States.

Edward M. Reidy, Chief Counsel, Leo H. Pou, Asst. Chief Counsel, Washington, D. C., for intervening defendant Interstate Commerce Commission.

Marshall McDonald, Houston, Tex., Jones, Walker & Waechter, J. Mort Walker, Jr., New Orleans, La., Christopher & Bailey, T. S. Christopher, Fort Worth, Tex., for intervening defendant Gulf-Canal Lines, Inc.

Before HOLMES, Circuit Judge and CHRISTENBERRY and WRIGHT, District Judges.

WRIGHT, District Judge.

Plaintiffs bring this action under Sections 1336, 1398, 2284, 2321, 2323, 2324 and 2325 of Title 28 U.S.Code to vacate and set aside certain orders of the Interstate Commerce Commission entered in an application proceeding under Section 309(c) of the Interstate Commerce Act [1] whereby the Commission issued to Gulf-Canal Lines, Inc., a certificate of public convenience and necessity as a common carrier by water.

Action was brought against the United States as required by 28 U.S.C. § 2322. John I. Hay Company, Texas and New Orleans Railroad Company and the Missouri Pacific Lines have intervened as plaintiffs and the Interstate Commerce Commission and Gulf-Canal have intervened as defendants, all as permitted by 28 U.S.C. § 2323. The jurisdiction of this court is not questioned.

Lemle & Kelleher, Selim B. Lemle, New Orleans, La., Macleay and Lynch, Donald Macleay, Washington, D. C., Francis W. McEnerny, for plaintiffs.

Terriberry, Young, Rault & Carroll, Alfred M. Farrell, Jr., New Orleans, La., for intervening plaintiff John I. Hay Co.

Chaffe, McCall, Toler & Phillips, Edmund McIlhenny, New Orleans, La., Wal-

---

1. Section 309(c) of the Interstate Commerce Act reads as follows:

"(c) Subject to section 910 of this title, upon application as provided in this section the Commission shall issue a certificate to any qualified applicant therefor, authorizing the whole or any part of the operations covered by the application, if the Commission finds that the applicant is fit, willing, and able properly to perform the service proposed and to conform to the provisions of this chapter and the requirements, rules, and regulations of the Commission thereunder, and that the proposed service, to the extent authorized by the certificate, is or will be required by the present or future public convenience and necessity; otherwise such application shall be denied." 49 U.S.C.A. § 909(c).

On June 10, 1952, when it filed the application for the certificate here in suit, Gulf-Canal already held a certificate authorizing it to operate as a common carrier of general commodities—

(1) by trailers used by it and moved in line-haul service

(a) by self-propelled vessels, and

(b) by non-self-propelled vessels with the use of separate towing vessels, between ports and points along the Gulf Intracoastal Waterway from Mobile, Alabama, to Corpus Christi, Texas, inclusive, and the Gulf of Mexico Coast from Corpus Christi to Brownsville, Texas, inclusive, also connecting ship channels and tributary waterways, except the Mississippi River system above New Orleans and the Trinity River above Liberty, Texas; and

(2) without the use of trailers, when tendered for shipment in quantities of not more than 150 tons, by self-propelled vessels, and by non-self-propelled vessels with the use of separate towing vessels

(a) between ports and points along the described waterways from Beaumont to Brownsville, inclusive, and

(b) between such ports and points (except Beaumont, Port Neches, and Port Arthur, Texas), on the one hand, and New Orleans and Mobile, on the other.

The application filed in June 1952 sought a new or revised certificate which would authorize Gulf-Canal to operate as a common carrier by self-propelled vessels, and by non-self-propelled vessels with the use of separate towing vessels, in the transportation of general commodities, without limitation, between ports and points along the Intracoastal Waterway from Mobile to Brownsville, inclusive, also connecting ship channels and tributary waterways except the Mississippi River system above New Orleans and the Trinity River above Liberty. A study of the certificate previously held by Gulf-Canal as compared with the certificate in suit shows that the principal effect of granting the new certificate is to extend Gulf-Canal's authority by (1) removing the restriction against handling shipments in excess of 150 tons (thus permitting it to handle bargeload shipments in conjunction with its existing trailer and less-bargeload service); (2) eliminating the exception against its serving Beaumont, Port Neches, and Port Arthur; and (3) permitting it to operate along the recently completed portion of the Intracoastal Waterway between Corpus Christi and Brownsville, in lieu of operating along the Gulf of Mexico coast between those points.

Hearing on the application for the new certificate was conducted by a Commission Examiner on June 22, 23 and 24, 1952 at Houston, Texas. Participating in the hearing were numerous protestants including the plaintiffs in the present action. Following the hearing and the filing of briefs by the applicant and by the protestants, the Examiner submitted his proposed report in which he recommended that the application be denied. To that proposal Gulf-Canal excepted and the Commission, Division Four, upon consideration of the exceptions and the protestants' replies thereto issued its report and order dated April 10, 1953 granting the application for the new certificate. Thereafter certain of the protestants, including the present plaintiffs, filed petitions for reopening, reconsideration and oral argument, to which petitions Gulf-Canal replied. By order dated July 20, 1953 the entire Commission denied the petitions.

The present action seeks to have the court set aside and annul both the order of April 10, 1953 granting the new certificate and the order of July 20, 1953 denying the petitions for reconsideration. The questions presented are (1) is the proposed service authorized by the new certificate required by the present or future public convenience and necessity; and (2) if so, is the applicant fit, willing and able properly to perform the service proposed.

Before undertaking a consideration of these questions, reference should first be had to the scope of the judicial review of orders of the Interstate Commerce Commission. It seems clear that

the scope of the judicial review of administrative proceedings may have been broadened to some extent by the Administrative Procedure Act.[2] Whereas formerly an administrative order was valid if supported by substantial evidence, now the touchstone of validity is "substantial evidence on the record considered as a whole."

Section 10(e)[3] of the Administrative Procedure Act relating to judicial review of administrative agency actions provides that the reviewing court shall "hold unlawful and set aside agency action, findings and conclusions found to be * * * (5) unsupported by substantial evidence. * * * In making the foregoing determinations the court shall review the whole record or such portions thereof as may be cited by any party * * *." In interpreting Section 10(e) the Supreme Court in Universal Camera Corporation v. National Labor Relations Board, 340 U.S. 474, 488, 71 S.Ct. 456, 464, 95 L.Ed. 456, stated:

"* * * The substantiality of evidence must take into account whatever in the record fairly detracts from its weight. This is clearly the significance of the requirement in both statutes that courts consider the whole record. * * *

"To be sure, the requirement for canvassing 'the whole record' in order to ascertain substantiality does not furnish a calculus of value by which a reviewing court can assess the evidence. Nor was it intended to negative the function of the Labor Board as one of those agencies presumably equipped or informed by experience to deal with a specialized field of knowledge, whose findings within that field carry the authority of an expertness which courts do not possess and therefore must respect. Nor does it mean that even as to matters not requiring expertise a court may displace the Board's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had

the matter been before it de novo. Congress has merely made it clear that a reviewing court is not barred from setting aside a Board decision when it cannot conscientiously find that the evidence supporting that decision is substantial, when viewed in the light that the record in its entirety furnishes, including the body of evidence opposed to the Board's view."

It is now clear, therefore, that orders of administrative agencies are to be enforced only when such orders have a rational basis in adequate findings which are supported by substantial evidence on the record considered as a whole. It is further true, however, that the court may not substitute its judgment for the judgment of the agency which, under the law, is presumably equipped by experience to deal with matters coming within the orbit of its expertise. A court exceeds its function when it attempts to weigh the evidence or to determine the credibility of the witnesses. The court's function is at an end when it determines that the findings of the agency are, or are not, supported by substantial evidence on the record considered as a whole.

Plaintiffs first make the contention that the Commission has made insufficient findings on which to predicate its ultimate conclusion, as required by accepted standards of judicial and quasi judicial procedure and specifically by the Administrative Procedure Act. Section 8(b) of the Administrative Procedure Act, 5 U.S.C.A. § 1007(b), requires that in agency proceedings such as the one now under review "All decisions * * * shall * * * include a statement of (1) findings and conclusions, as well as the reasons or basis therefor, upon all the material issues of fact, law, or discretion presented on the record * * *."

The Commission here made its ultimate or quasi judicial findings in the terms of the Act which authorizes issu-

---

2. Administrative Procedure Act is applicable to Interstate Commerce Commission proceedings. Riss & Co., Inc., v. United

States, 341 U.S. 907, 71 S.Ct. 620, 95 L.Ed. 1345.

3. 5 U.S.C.A. § 1009(e).

ance of a certificate of convenience and necessity when it is found "that the applicant is fit, willing, and able to perform the service proposed * * * and that the proposed service * * * is or will be required by the present or future public convenience and necessity". 49 U.S.C.A. § 909(c). In addition, the Commission, Division Four, filed a lengthy opinion setting out the facts in detail as well as the considerations which led to its ultimate conclusion. Among its findings as outlined in its opinion are: (1) With the exception of the plaintiff, Red River Barge Line, which has a very limited area of operation, plaintiffs render only bargeload service and will not accept for movement in their operations, shipments in less than bargeload quantities; (2) The shippers' need, based particularly on increased anticipated demands, is for a Texas domiciled operator conveniently located with equipment readily available for regular service and prompt movement of shipments in bargeload and less than bargeload quantities along the route covered by the certificate; (3) Most of these shippers do not now use water transportation; (4) The Gulf coast area is undergoing substantial industrial growth with increased transportation needs; (5) None of the plaintiffs offer a complete bargeload and less than bargeload service along the route of the new certificate; (6) The territory with which the application is concerned is able to support the bargeload service proposed by Gulf-Canal; (7) The service now being rendered by plaintiffs does not completely meet the needs of the shipping public; and (8) In view of the past performance of its stockholders in advancing financial assistance when necessary and the assurances of additional funds to institute the proposed enlarged service, Gulf-Canal is fit, willing and able to perform the proposed operation.

■■ From these findings and the evidence which supports them, it is clear that "Enough has been 'put of record to enable us to perform the limited task which is ours.'" Alabama Great Southern Railroad Co. v. United States, 340 U.S. 216, 71 S.Ct. 264, 272, 95 L.Ed. 225. Section 8(b) of the Administrative Procedure Act does not require detailed or numbered findings of every subsidiary evidentiary fact. So long as the agency makes clear the factual basis on which it has proceeded, and the conclusions arrived at have a rational basis in those facts, the requirement of the Administrative Procedure Act is satisfied. Norfolk Southern Bus Corp. v. United States, D. C., 96 F.Supp. 756, affirmed 340 U.S. 802, 71 S.Ct. 68, 95 L.Ed. 590. Nor does the Interstate Commerce Act require detailed or numbered findings of fact, except in a case where damages are awarded. 49 U.S.C.A. § 14(1); Manufacturers Ry. Co. v. United States, 246 U.S. 457, 487, 489, 490, 38 S.Ct. 383, 62 L.Ed. 831; Alabama Great Southern Railroad Co. v. United States, supra.

Plaintiffs' second contention is likewise without merit. Plaintiffs contend that the findings of the Commission are not supported by substantial evidence on the record taken as a whole. The record shows without question that the Gulf area covered by the new certificate is experiencing unprecedented industrial growth and that a substantial part of this growth is attributable to the increased production or use in that area of salt, sulphur, oil, steel, chemicals and fertilizer, products which are peculiarly susceptible to inland transportation by water. This industrial growth has increased and will continue to increase the need for service as proposed by the applicant. In fact, the annual financial statements of the plaintiffs themselves are mute testimony to the increased demand for water carriers in the area.

The record further shows without question that the service proposed by applicant is presently not being offered. The plaintiffs, with the exception of Red River Barge Line, refuse to accept for shipment less than bargeload quantities and Red River serves only that stretch of the Intracoastal Waterway between New Orleans and Beaumont. There are shippers in the area who have not used water transportation because over-all

service is not being offered and because the service, even with respect to barge-load quantities, is inadequate to meet their demands.

Much of the evidence taken before the Commission on the question of need for the proposed service is completely un-contradicted except by cross-examination of the witnesses themselves. It is admitted that the Gulf area is growing industrially and it cannot be denied that the need for water carriers in that area is a by-product of the industrial growth. Yet none of the plaintiffs, with the already noted exception of Red River Barge Line, even now will begin to accept less than bargeload quantities for shipment in spite of the fact that their certificates to serve the public are unlimited. Gulf-Canal alone among the water carriers in the area is restricted by its present certificate to less than bargeload quantities. Nevertheless, plaintiffs oppose his application for an unlimited certificate while refusing to serve the shippers of less than bargeload quantities. This record shows not only that there is a need for a water carrier in the Gulf area who will serve the shipper public without restriction, but the plaintiffs themselves have contributed to this need by their failure to offer service, although authorized to do so, except on terms suitable to themselves.

█ The record shows that the evidence taken before the administrative agency was first considered by an Examiner who would have denied Gulf-Canal's application. The Commission, Division Four, sitting with three commissioners, one dissenting, held that the present and future public convenience and necessity required the issuance of the new certificate, and the entire Commission denied plaintiffs' application for rehearing and reconsideration. It appears therefore that the administrative process herein has been completely in accord with due process of law. The rights of the competing parties have been thoroughly weighed by the various function-aries of the agency involved. And the agency itself after weighing these rights in relation to the public interest has concluded against the plaintiffs. It may well be that if this court had participated in weighing the evidence in this case before the Commission, it may have come to a conclusion more acceptable to the plaintiffs herein. But such is not our function. The Commission has acted and its action finds a rational basis in the evidence. Its judgment is supported by substantial evidence on the record considered as a whole.

Plaintiffs make the further contention that there is no warrant in law or in fact for the territorial extension of the Gulf-Canal certificate over the waterway from Corpus Christi to Brownsville and Harlingen. In support of this contention plaintiffs seize on language in the Commission's opinion which states that such extension "would simplify and make uniform applicant's present operating rights and those granted herein." They assert that this language does not justify the territorial extension. In so doing plaintiffs misread the Commission's opinion and disregard the substantial evidence in the record, taken from the representatives of the Port of Harlingen and shippers who would use Harlingen and intermediate points between Brownsville and Corpus Christi, showing the need for the proposed service along this part of the Intracoastal Waterway.

Gulf-Canal's existing certificate gives it authority to serve the Port of Brownsville via the Gulf of Mexico. At the time this certificate was obtained the Intracoastal Waterway had been cut only as far as Corpus Christi. Now that the canal goes through to Brownsville, it would seem ill-advised for the Commission to give the applicant a certificate to use the Intracoastal Waterway to Corpus Christi and then require him to use the open Gulf of Mexico to Brownsville, particularly since Section 309(d) of the Interstate Commerce Act[4] provides that the Commission shall not restrict the

4. 49 U.S.C.A. § 909(d).

right of a carrier to extend its services over uncompleted parts of a waterway project now or hereafter authorized by Congress.

The railroads who intervened herein as parties plaintiff suggest that the reason the Commission issued the new unlimited certificate to Gulf-Canal was to subsidize the less than bargeload service which the applicant is offering under its present certificate. They assert that Gulf-Canal has suffered financial losses each year of its operation and therefore the effect of removing the quantity restriction from the Gulf-Canal certificate is to allow Gulf-Canal to make a profit from its bargeload service while continuing to lose money on less than bargeload quantities. They say further that service in such quantities competes with the service offered by the railroads and consequently the railroads would be subjected to unfair competition. The railroads' argument is predicated on the assumption that the only reason the Commission granted the new certificate was to keep Gulf-Canal in an unprofitable business which competes with the railroads. As shown above, the Commission found a need for a water carrier which would provide less than bargeload as well as bargeload service along the Intracoastal Canal and that Gulf-Canal's proposed service would meet this need. If the railroads feel that Gulf-Canal or any other water carrier is angling its rates to operate at a loss where competition with railroads exists, that matter can be brought to the attention of the Commission in a proper proceeding.

■ Intervenor, John I. Hay Company, complains that it has heretofore been ignored in these proceedings. The Commission dismissed its protest with the reference that Hay was a Mississippi River carrier and consequently was not primarily concerned with any certificates issued for operation on the Intracoastal Waterway. Hay maintains, however, that it has authority to operate not only on the Mississippi River but on the Intracoastal Waterway as well and that Gulf-Canal would adversely affect its present balanced business by getting Texas shippers to require Mississippi River carriers to interline with Gulf-Canal at New Orleans. It is difficult to conceive such an operation being economically feasible in competition with the through service offered by Hay. Apparently Hay is more impressed with the puffing statements of Gulf-Canal's president than by the realities of the towage business. Even if we assume, however, that the proposed service will provide competition to Hay, that alone is not sufficient reason to vacate the Commission's order. A carrier first in business has no immunity against future competition. Chesapeake & Ohio Ry. Co. v. United States, 283 U.S. 35, 42, 51 S.Ct. 337, 75 L.Ed. 824; North Coast Transportation Co. v. United States, D.C., 54 F.Supp. 448, 451, affirmed 323 U.S. 668, 65 S.Ct. 62, 89 L.Ed. 543; Norfolk Southern Bus Corp. v. United States, supra.

Since this case was argued, plaintiffs have filed a petition to reopen the proceeding and to assign it for reargument on the ground that the Commission, in its recent opinion dated September 10, 1953, Docket No. W–751, Commercial Barge Lines, Inc., Extension—General Commodities, in considering, and denying, an application for a certificate covering a proposed trailer-barge service on the Mississippi River and connecting waterways, including the Gulf Intracoastal Canal, used language explaining and clarifying the basis for its conclusions in the case at bar.[5] Plaintiffs contend that

5. The pertinent language is as follows:
"Prior to the opening of the Gulf Intracoastal Waterway between New Orleans and Houston in 1934, Coyle Lines and Dixie Carriers used sea-going barges to transport commodities between ports on the Gulf of Mexico. Commodities originating at or destined to points on the Mississippi River system of inland waterways were transferred to the latter's barges at New Orleans. When the Intercoastal Waterway between New Orleans and Houston was opened in 1934, providing a protected water route between these ports, it was possible to eliminate the transfer of lading and move the river barges through the inland water route. Tonnage interchanged with other

the Commission's decision in the Commercial Barge Lines case leaves no doubt that the Commission's purpose in giving Gulf-Canal authority to operate in bargeload quantities was to support the economically unfeasible less than bargeload service now being offered by Gulf-Canal under its existing certificate.

The Commission's opinion in the Commercial Barge Lines case when read in connection with the Commission's opinion herein shows (1) that there is a need for less than bargeload service along the route of the Gulf Intracoastal Waterway, which need is presently being served by Gulf-Canal Lines and which need plaintiffs herein have failed to serve; (2) that in order for Gulf-Canal to continue to serve the less than bargeload need it is necessary to remove the bargeload restriction from its operating authority; (3) that in view of the continuing industrial expansion in the Gulf area, that area will support the bargeload service proposed by Gulf-Canal and that plaintiffs will not be materially affected by the added competition for bargeload quantities; (4) that the present and future public convenience and necessity require the issuance of a certificate to Gulf-Canal under which it may provide bargeload as well as less than bargeload service in the area concerned.

It is not for this court to decide what the public convenience and necessity require and the statute outlines no specification by which public convenience and necessity may be determined. Congress has rested responsibility for making that determination in the experienced hands of the Commission which may "draw its conclusion from the infinite variety of circumstances which may occur in specific instances." Interstate Commerce Commission v. Parker, 326 U. S. 60, 65 S.Ct. 1490, 1493, 89 L.Ed. 2051. Its determination is presumptively correct. Illinois Central Railroad v. Interstate Commerce Commission, 206 U.S. 441, 27 S.Ct. 700, 51 L.Ed. 1128. It may be that the findings of the Commission in the case at bar appear inconsistent with its findings in the Commercial Barge Lines case. However, as said by Mr. Justice Brandeis in Virginian Railroad Co. v. United States, 272 U.S. 658, 666, 47 S.Ct. 222, 225, 71 L.Ed. 463, "This court has no concern with the correctness of the Commission's reasoning, with the soundness of its conclusions, or with the alleged inconsistency with findings made in other proceedings before it." So long as there is substantial evidence in this record taken as a whole to support the conclusion that the public convenience and necessity require the issuance of a certificate to Gulf-Canal covering less than bargeload as well as bargeload quantities, no further inquiry need or should be made. We have examined the record as a whole and we find substantial evidence to support the Commission's action.

It appearing therefore that the order of the Interstate Commerce Commission granting the certificate herein is support-

---

water carriers at New Orleans constitutes an important part of the traffic handled by Coyle Lines and Dixie Carriers, and these carriers have ample capacity for handling additional interline freight as well as local traffic wherever it is available.

\* \* \* \* \*

"The evidence does not warrant a finding that the public convenience and necessity require the proposed service for nontrailer freight. A few shippers complain of slow service and of the existing carriers' failure at times promptly to respond to their demands for equipment; and they desire more frequent schedules. In the main, however, they do not seriously question the adequacy of the existing bargeload service.

\* \* \* \*

"We think it obvious that general barging rights of that scope should not be issued merely to sustain a proposed trailer-barge service, which should be granted only on the basis of a substantial showing that the public convenience and necessity requires the service.

\* \* \* \* \*

"We have removed operating restrictions or added to operating rights where such seemed necessary to assure the continuance of an existing service required by the shipping public." (Citing the case at bar.)

ed by substantial evidence on the record taken as a whole, and it further appearing that the required quasi judicial findings of the Commission have a rational basis not only in the subsidiary findings but in the evidence as well, the injunctive relief sought must be denied.