STAUFFER LABORATORIES, INC., a
corporation, Petitioner,

v.

FEDERAL TRADE COMMISSION,
Respondent.

No. 19279.

United States Court of Appeals
Ninth Circuit.

Feb. 17, 1965.

Julian O. von Kalinowski, Gibson, Dunn & Crutcher, Los Angeles, Cal., Charles S. Rhyne, Edward D. Coxen, Washington, D. C., Rhyne & Rhyne, Washington, D. C., for petitioner.

James McI. Henderson, Gen. Counsel, J. B. Truly, Asst. Gen. Counsel, Frederick H. Mayer, Harold A. Kennedy, Attys., F. T. C., Washington, D. C., for respondent.

Before POPE, BARNES and ELY, Circuit Judges.

POPE, Circuit Judge.

This is a petition to review a cease and desist order issued by the Federal Trade Commission directed to the petitioner Stauffer Laboratories, Inc. (hereafter called Stauffer) and its principal officer, pursuant to a complaint charging the petitioner with using unfair or deceptive acts or practices in commerce and with disseminating false and misleading advertisements with respect to a certain device which it offered for sale and sold, and which it called its "Magic Couch" or "Posture-Rest".

This so-called "couch" consists of a central oscillating section measuring ten by fifteeen inches and two larger sections that are attached to opposite sides of the central section. The couch is intended to be used in connection with a plan known as the "Stauffer Home Plan." The entire plan consists of two parts. One is the use of the couch and the other is the following of a low calorie diet. In the use of the couch the user lies upon it with his head on one attached portion and his legs on another while the central portion of his body is given what is called "effortless exercise" through the oscillation of the central portion. The representation of the advertising involved is that by following the plan the purchaser will lose weight.

The complaint before the Commission was not addressed to the plan as a whole but rather to certain advertisements which the complaint alleged amounted to statements that the use of the couch alone, when used in a program of effortless exercise, would cause loss of weight and increase muscle tone. The allegation was that the advertisements here under attack directly or inferentially asserted that the couch, taken alone and by itself, and apart from any other portion of a so-called "plan", is of value in bringing about weight reduction and a toning of sagging muscles. The complaint then charges, and the Commission found, that the "Magic Couch" cannot

and will not perform in accordance with these claims, and that it has no value or usefulness in accomplishing the asserted results.

The opinion of the Commission sets forth certain of the accused advertisements which it found to be typical. They are copied in the margin.[1] In the process of making its finding that the petitioner in its advertisements was making claims for the effectiveness of the device independently of the plan the Commission discussed these advertisements as follows: "While it is true that respondents mention the 'plan' in their advertising, the emphasis is mainly on the device. The advertisements state or imply that the device itself will provide or contribute to the claimed benefits. For instance, one representation reads: 'This exercise does away with inches * * * tones and firms hard to reach problem areas. * * * The 'This exercise' is the exercise which the user is supposed to get from the couch; hence, according to the representation, it is the couch itself which does the reducing and toning.

"While the advertisements briefly refer to calorie reduction, the general impression is that the couch provides most or all of the benefits. Certain of the advertisements state that the couch adds something which the user can't get by the diet alone, thus clearly plugging the merits of the couch. An example is as follows: 'When you want to lose both inches and pounds, exercise on the Magic Couch is combined with sensible calorie reduction. This brings about results you just *can't get from diet alone.* * *' (Emphasis supplied.) The significance of the device is stressed in other ways, such as by referring to it as the 'heart of the famous Stauffer Home Reducing Plan' and by prominent illustrations. In addition, respondents' advertisements mention 'effortless exercise', which plainly places the emphasis on the device,

1. "GET SLIM
STAY SLIM
insist on STAUFFER
the only home plan backed
by 20 years of reducing success
The Stauffer principle has helped
more than 5 million women
remake their figures.
It's a complete figure-beautifying
plan of effortless exercise and calorie reduction.
Stauffer's 'Magic Couch'—The Posture-Rest unit—provides controlled rhythmic motion.
Helps take off excess weight,
remove unwanted inches.
No starvation diets. No strenuous exercise."
"Exercise comes first with Stauffer. But it's effortless exercise—without work or strain—on Stauffer's Magic Couch. This exercise does away with inches * * * tones and firms hard-to-reach problem areas * * * improves posture * * * even reproportions. When you want to lose both inches and pounds, exercise on the Magic Couch is combined with sensible calorie reduction. This brings about results you just can't get from diet alone. And every woman who reduces with Stauffer does it with the help and encouragement of another woman * * * a trained Stauffer counselor."

"Greet Summer
With a
lovelier
figure
How you'll look in a swimsuit depends on how you REDUCE. No longer need heavy hips, thighs, legs and waistline 'rolls' embarrass you. Beautify your posture, reproportion your figure into more youthful looking, lovelier lines by trimming away unwanted inches with the famous STAUFFER HOME REDUCING PLAN of effortless exercise and calorie reduction. * * *"
" * * * The Magic Couch (Posture Rest) is the heart of the Stauffer Home Reducing Plan of effortless exercise and calorie reduction. * * *"
"You lose unwanted pounds.
You lose inches where you need to—from hips, tummy, thighs.
You achieve a graceful, lifted posture.
Your skin fits smoothly—sagging tissue is firmed and toned. * * *"
"There is more to the Stauffer Home Plan than just reducing. Rather, it is a complete program of scientific figure control. It not only takes off excess weight, but also removes hard-to-lose inches from ankles, thighs, hips and tummy.
"For a woman, it tones and firms sagging muscles, beautifies posture for a lovelier carriage, and gives her a more youthful-looking figure."

and they make claims for reductions in specific areas (e. g., 'hard to lose inches from ankles, thighs, hips and tummy'), which suggest the exercising of these areas by the device. When all these factors are considered, there is no doubt that respondents, though selling a device in conjunction with a plan, are also making claims for the effectiveness of the device independent of the plan."

■ The petitioner takes issue with these findings of the Commission saying: "The Commission erringly concludes that the potential purchaser of the Plan is misled into believing that any and all benefits resulting from the Plan are obtained solely through use of the Device. But, Petitioner advertises and sells a 'Stauffer Home Plan,' a 'Stauffer Home Reducing Plan,' a 'Figure-Beautifying Plan,' and a 'Stauffer Principle' of 'sensible' weight reduction and muscle toning. All of these terms are constantly used in Petitioner's advertising and booklets." Although the texts of these advertisements are before us, and in that sense the facts as to what the advertisements were are undisputed, yet we are not for that reason free to disagree with the Commission's finding to the effect that the advertisements did make these claims for the effectiveness of the device independent of the plan. In reviewing the findings of a district court, the established rule, recognized by this court, is that in respect to inferences drawn from undisputed facts the findings may not be set aside unless found to be clearly erroneous. Lundgren v. Freeman, 9 Cir., 307 F.2d 104, 115. In that case this court adopted the rationale employed by the Supreme Court in Commissioner v. Duberstein, 363 U.S. 278, 289, 80 S.Ct. 1190, 1198, 4 L.Ed.2d 1218, where the Court said: "Decision of the issue presented in these cases must be based ultimately on the application of the fact-finding tribunal's experience with the mainsprings of human conduct to the totality of the facts of each case."

■ That view of the significance of the inference drawn by the fact finding body is even more applicable in the review of a decision of the Federal Trade Commission, for in such a review we must take into account the experience and the expertise of the Commission which is set up to deal with precisely this sort of thing in the advertising field. This court stated in Carter Products, Inc. v. F. T. C., 9 Cir., 268 F.2d 461, 495, "The Commission is deemed to have expert experience in dealing with matters of the character involved in the instant case. * * * And it may draw upon its own experience in order to determine (even) in the absence of consumer testimony, the natural and probable result of the use of advertising expressions."

■ We cannot hold erroneous the Commission's finding as to what the advertisements stated and represented even if we were inclined to disagree with the Commission, which we are not.

Petitioner argues that as a matter of law the Commission cannot consider the device, that is the couch, otherwise than as an inextricable component of petitioner's whole plan. Petitioner says that the device, while essential, is inextricably intertwined with the plan. There is no doubt that in working out its selling program petitioner undertook to tie the device in with its whole plan, for the device obviously was the money making portion of the enterprise. Low calorie diets can be readily procured in small, inexpensive booklets or pamphlets; they can be procured without charge or for a nominal sum from the Government Printing Office, and they may be found in almost any ladies' magazine. But the couch is what really produced the money, as it represented an investment of approximately $300 for the purchaser.

As we shall note hereafter, evidence before the Commission tended to indicate that the purchaser would get as much in the way of beneficial weight reduction from using and following a low calorie diet, obtainable from an inexpensive diet list, as he would get from such a list plus the $300 couch. But, if the couch added nothing of value to the plan, and if

the advertisements attributed effective weight reduction to the couch alone, then we have a situation in which something worthless has been packaged with something effective. In such a case the seller cannot with impunity advertise that the worthless article is effective to produce certain results.

Counsel for the Commission illustrate this as follows: "Assume for example that a glass of orange juice supplies the daily ration of Vitamin C. A seller of sugar pills could well advertise: 'Take one capsule each day with one glass of orange juice and you will receive your daily requirement of Vitamin C."

This is not the first time in which the Commission has had to deal with this problem. Thus, In re Damar Products, Inc., 59 F.T.C. 1263, 1270 (affirmed in Damar Products, Inc. v. Federal Trade Commission, 309 F.2d 323 (3d Cir. 1962), the Commission said: "The general tenor and effect of respondents' said advertising * * * is not to emphasize dieting as is argued by respondents, but to sell the said vibrator device; and since those who read the advertisements are not required to dissect and analyze the words used in detail, only one conclusion can be reached, which is that the advertisements cause the average person of ordinary intelligence, let alone the ignorant, to believe the vibrator alone is of value in causing body-weight reduction and will also tone and firm sagging muscles, even though reference is made in such advertisements to a so-called 'Plan' which also includes provisions for following a low-calorie diet."

We hold that this approach of the Commission whereby it dealt with the advertisement representation respecting the couch apart from any other por-

tion of the so-called "Plan" was an appropriate one.

The Commission then found that the "Magic Couch" cannot and will not perform in accordance with the claims expressly and impliedly made in these advertisements; and that it has no value or usefulness in accomplishing such results.[2]

This finding was amply supported by evidence adduced in the proceedings before the Commission, evidence which the Commission had the right to believe and accept. The applicable section of the Act provides (§ 5(c), Federal Trade Commission Act, 15 U.S.C. § 45(c)), that upon a review of this kind "[t]he findings of the Commission as to the facts, if supported by evidence, shall be conclusive." A large portion of petitioner's brief is devoted to an effort to convince us that the Commission's evidence was less authoritative and less persuasive than that produced by petitioner. In pursuing this effort the petitioner has undertaken to analyze the Commission's evidence, particularly that given by medical experts called by the Commission and has undertaken to denigrate their testimony by characterizing three of them as "Professors of Medicine", asserting that they had but limited familiarity with the couch and with the plan as a whole, and charging some of them with manifest bias as well as lack of professional knowledge and skill. On the other hand, says petitioner, its case was based upon the testimony of "highly qualified medical doctors" plus that of a professor of anatomy who was a "noted" professor, and its medical witnesses are asserted to be "specialists" in medicine who had a thorough understanding of the couch and of the plan.[3]

---

2. The language used by the Commission in this respect was as follows: "The examiner ultimately found that respondents' device does not increase the expenditure of energy to a significant degree, that it is not effective or of value for reducing the weight or size of parts of the body or the whole body, and that it is not effective in firming or toning useless muscles of the body. We concur fully in this finding."

3. Such arguments are not new in this court. In Feil v. F. T. C., 9 Cir., 285 F.2d 879, 893, we said, quoting from an earlier decision: "The witnesses were shown to possess wide knowledge in the field under inquiry. There is no good

Such matters are not properly argued to us in a case of this kind, where the findings are supported by substantial evidence on the record considered as a whole. In Fed. Trade Comm'n v. Algoma Co., 291 U.S. 67, 73, 54 S.Ct. 315, 318, 78 L.Ed. 655, the Court, after quoting from the provision of the Code to which we have just alluded, and in reversing the decision of this court which had annulled an order of the Federal Trade Commission, said: "In fact what the court did was to make its own appraisal of the testimony, picking and choosing for itself among uncertain and conflicting inferences. Statute and decision (Federal Trade Commission v. Pacific States Paper Trade Association, 273 U.S. 52, 61, 63 [47 S.Ct. 255, 71 L.Ed. 534]) forbid that exercise of power." Some twenty-two years later, when this court, in reviewing another order of the Federal Trade Commission relating to false advertising, forgot the admonition made in the Algoma case, and again annulled an order of the Federal Trade Commission on the basis of the court's disagreement with the Commission's findings of fact, (Sewell v. Federal Trade Commission, 9 Cir., 240 F.2d 228), the Supreme Court promptly and summarily reversed. (Federal Trade Commission v. Sewell, 353 U.S. 969, 77 S.Ct. 1055, 1 L.Ed.2d 1133.) The authorities in accord are numerous.[4]

The Commission in its decision and order reviewed at great length the evidence presented before it. That decision, not yet officially reported in the Commission's reports, is reported in Vol. 3 C.C.H. Trade Reg.Rep. No. 16,798, p. 21,737. It would serve no useful purpose for us to review the evidence which we have examined and which, as we have stated, is abundantly sufficient to sustain the Commission's findings.[4a]

reason to suppose them incompetent to express an opinion as to the lack of therapeutic value of petitioner's preparation merely because they had had no personal experience with it in the treatment of the disease. Their general medical and pharmacological knowledge qualified them to testify."

4. Corn Products Refining Co. v. Federal Trade Comm'n, 324 U.S. 726, 739, 65 S.Ct. 961, 967, 89 L.Ed. 1320: "The weight to be attributed to the facts proven or stipulated, and the inferences to be drawn from them, are for the Commission to determine, not the courts."

The mistaken notion, sometimes advanced, that this court may review the evidence before an administrative board to the same extent as it may review findings of a trial judge under the "clearly erroneous" rule, was answered by Judge Parker in National Labor Relations Bd. v. Southland Mfg. Co., 4 Cir., 201 F.2d 244, 246 et seq. In the course of a thorough discussion he quoted from Universal Camera Corp. v. National Labor Relations Bd., 340 U.S. 474, 71 S.Ct. 456, 95 L. Ed. 456, as follows: "Nor was it intended to negative the function of the Labor Board as one of those agencies presumably equipped or informed by experience to deal with a specialized field of knowledge, whose findings within the field carry the authority of an expertness which

courts do not possess and therefore must respect." And in Universal Camera the Court added: "Nor does it mean that even as to matters not requiring expertise a court may displace the Board's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." (340 U.S. at p. 488, 71 S.Ct. 456.)

4a. Without attempting to summarize all of the Commission's discussion of the evidence we may note that the Commission's resolution of the issues of fact did not turn upon questions of credibility. Rather the Commission accepted the views of those experts who it believed had superior qualifications and whose opinions were based upon fully established premises. For instance, the medical experts who testified, as stated by the examiner, "that the device was of no value in reducing weight or toning or firming muscles either alone or in conjunction with a diet or anything else," were all ranking specialists in the field of physical medicine and rehabilitation. They were professors of medicine in leading medical schools and diplomates of the American Board of Physical Medicine and of Rehabilitation. One of them had observed controlled tests of this device at a Washington University hospital and another had conducted a study of

■ Petitioner contends with great earnestness that the Commission failed to make the essential basic findings called for by § 8(b) of the Administrative Procedure Act (5 U.S.C. § 1007(b)), and cites and relies upon cases holding that such findings are essential to sustain the order of the Commission, such as Burlington Truck Lines v. United States, 371 U.S. 156, 83 S.Ct. 239, 9 L.Ed.2d 207, and Anglo-Canadian Shipping Co. Ltd. v. Federal Maritime Commission, 9 Cir., 310 F.2d 606. There is no doubt but that such is the rule with respect to required findings but we are unable to perceive that it has an application to this case. Here the Commission has found, in line with testimony which it believed most persuasive, that the "Magic Couch" has no value or usefulness in accomplishing the result claimed for it. We are unable to perceive why that does not amount to a basic finding of fact. The word "value" has a plain and simple meaning. In the language of the dictionary it means "The quality of fact of being worthwhile, excellent, useful or desirable." The argument made by petitioner would call for a refinement in respect to findings beyond anything which the statute or reason requires.

To illustrate, petitioner says that the Commission failed to make required findings "By failing to make basic findings as to the amount of weight-inch loss required to constitute 'value' and the percentage of oxygen consumption or caloric expenditure required to constitute 'value', the Commission sought to establish an impregnable barrier to Petitioner's disproving the complaint's no 'value' allegations and, by this failure, sought to prevent effective judicial review of its action." This is a view of what is necessary in the shape of findings which we cannot accept. As stated by Judge Learned Hand for the court in Petterson Lighterage & Towing Corp. v. New York Central R. Co., 2d Cir., 126 F.2d 992, 996: "Findings should not be discursive; they should not state the evidence or any of the reasoning upon the evidence; they should be categorical and confined to those propositions of fact which fit upon the relevant propositions of law."

■ In framing Rule 52 relating to findings by a court in a case tried without a jury, it is noteworthy that the

similar device, operating in the same manner.

Petitioner produced medical witnesses to testify that patients of theirs who used the couch had lost weight. But these same patients had been put on low-calorie diets. The Commission noted that "there is little, if anything, to indicate that the unit alone was responsible for the weight and inch losses claimed." Petitioner also produced evidence of certain oxygen tests. These showed that as compared to a "basal" state or one of complete rest, a person using the couch would show an oxygen consumption increase. This, it was contended, would denote an increased calorie consumption and loss of weight. On the other hand, a witness for the Commission, who was the chief of the Metabolic Disease Branch of the National Institute of Arthritis and Metabolic Diseases, and a specialist in studies relating to metabolism, testified with respect to petitioner's witnesses' claims respecting calorie consumption and increase in energy expenditure, as follows: "If one were to accept these changes as statistically significant, which

I do not, but if one were to accept them, the increase in energy expenditure would amount to such a small amount in the realm of—for example, requiring more than a year to lose one pound in weight —assuming the dietary intake was kept constant, as to be of no real significance for the furtherance of weight loss in an obese person."

This brings to mind the statement of Judge Gould of the District of Columbia Supreme Court in United States v. Buffalo Lithia Springs Water (1914), quoted in Capon Water Co. v. F. T. C., 107 F.2d 516, 3 Cir. "For a person to obtain a therapeutic dose of lithium by drinking Buffalo Lithia Water he would have to drink from one hundred and fifty thousand to two hundred and twenty-five thousand gallons of water per day." (p. 518)

The Commission was fully justified in concluding that what Stauffer here produced could not, in the light of the credible evidence, in the slightest degree justify the advertisements here under attack.

case just referred to was cited by the Advisory Committee drafting the rule in support of the following statement: "But the judge need only make brief, definite, pertinent findings and conclusions upon the contested matters; there is no necessity for over elaboration of detail or particularization of facts." We think that findings which would satisfy the requirements of Rule 52 would satisfy the requirements of § 8(b) of the Administrative Procedure Act. The Supreme Court indicated as much in Minneapolis & St. Louis Ry. Co. v. United States, 361 U.S. 173, 193, 80 S.Ct. 229, 241, 4 L.Ed.2d 223, as follows: "By the express terms of § 8(b), the Commission is not required to make subordinate findings on every collateral contention advanced, but only upon those issues of fact, law, or discretion which are 'material'." [5] As stated in B. & O. R. Co. v. United States, 298 U.S. 349, 359, 56 S.Ct. 797, 803, 80 L.Ed. 1209: "There is no requirement that the Commission specify the weight given to any item of evidence or fact or disclose mental operations by which its decisions are reached." [6]

Petitioner is here insisting upon what in our view would be an "over-elaboration of detail or particularization of facts." We perceive no reason for a contention that all these subsidiary, evidentiary matters, referred to by petitioner, should be incorporated in the findings. Even so, the decision and opinion of the Commission relates at great length and detail all of the evidence and states with particularity the portions of the evidence which the Commission credited and believed. Nothing is lacking in this record to permit an adequate review by this court.

■■■ Petitioner asserts that the Commission's order should not be enforced because the Commission failed to consider certain attachments which could be affixed to the couch and be used by the person on the couch to obtain more active exercise than that furnished by the oscillation alone. The attachments referred to included a "stretch bar" and other extra parts which, if used, would provide a certain amount of resistance or increased physical effort by the user. Several things may be said about this—petitioner's advertising claims made no reference to such attachments; any benefits attributable to them would not be relevant to the truthfulness of the advertising. We can take judicial notice that a person after using the couch might reach for the foot of her bed and at that point do setting up exercises; thus the foot of the bed might be used as an adjunct or attachment but its use would have no bearing upon the value of the couch as such or upon the truthfulness of the advertisements. The Commission did have before it evidence which it believed disproved the claims made by Stauffer for these attachments and this evidence the Commission was entitled to credit and accept.

Petitioner contends that the Commission should have found value in a psychological or "motivational" factor in the use of its couch. Petitioner notes that one of its medical witnesses expressed the belief "that the psychological or motivational factor is the most important."

■■■ As we understand this contention it is that when a woman has paid $300 for a couch, which she uses for many hours, thinking this use is help-

5. The requirement of § 8(b) is as follows: "All decisions * * * shall * * * include a statement of (1) findings and conclusions, as well as the reasons or basis therefor, upon all the material issues of fact, law, or discretion presented on the record." The requirement of Rule 52 is that " * * * the court shall find the facts specially and state separately its conclusions of law thereon."

See Gilbertville Trucking Co. v. United States, D.C. (Woodbury, Sweeney and Wyzanski, JJ.), 196 F.Supp. 351, 359.

6. See also Coyle Lines v. United States, (D.C.E.D.La., Holmes, Christenberry and Wright, JJ.), 115 F.Supp. 272, 276; and Capital Transit Co. v. United States, D.C. (Washington, Kirkland and Bastian), 97 F.Supp. 614, 621.

ing her figure, she will be motivated not to undo these benefits by failing to stick to the prescribed diet. If, as we have held, the Commission properly found that the couch, as such, had no value for weight reduction, then this argument as to a motivational factor, amounts to saying that the advertisements and sales were justified because the woman who was deceived into buying the couch and used it in the mistaken belief that it was taking off pounds or toning her muscles, would thereby be encouraged to follow a low calorie diet; in other words, that it is all right to deceive by false advertising if the result of the deceit is to create a useful psychological attitude. No authority we know of would permit the Commission to approve false advertising if the result of the deceit is to create a useful psychological attitude.

Petitioner asserts that it was denied a fair hearing, charging the Commission with a "closed-mind, institutional approach to decision making", that it "acted with rarely equalled capriciousness and arbitrariness", that some of the hearings "amounted to a nation-wide circus", and that it applied a dual standard which "reared its ugly head in what perhaps amounts to the most shocking episode in the annals of administrative agency procedure." We find nothing in the record to justify such statements.

In line with these rather extreme assertions is the claim that the Commission is engaged in a "crusade against each and every device which is designed in any way to affect weight loss." We think that the Commission's procedures here were in line with the purposes of Congress in enacting the Act. We think it sound doctrine to say that "If the Commission * * * thinks it best to insist upon a form of advertising clear enough so that, in the words of the prophet Isaiah, 'wayfaring men, though fools, shall not err therein,' it is not for the courts to revise its judgment." Aronberg v. Federal Trade Commission, 7 Cir., 132 F.2d 165. See also Charles of the Ritz Dist. Corp. v. Federal Trade Comm'n, 2d Cir., 143 F.2d 676. The need for such clarity in advertising would seem to be particularly acute in the case of reducing devices. The eagerness with which women seek beauty aids is notorious. In this area they may be readily overreached. Through the years a number of things have been marketed as aids to reducing, and the Commission has often been obliged to prevent the false advertising of such things. A partial list of these Commission actions are set forth in the margin.[7] This compendium of false advertising claims in connection with weight-reduction provides additional support for the Commission's effort to induce complete truth in the advertising of products in that field.

The order of the Commission is affirmed.

7. E. Griffiths Hughes, Inc. v. Federal Trade Commission, 2 Cir., 77 F.2d 886 (Bath salts claimed to help reducing); Alberty v. Federal Trade Commission, 9 Cir., 118 F.2d 669 (Cheno Tea claimed to cause loss of weight); Stanton v. Federal Trade Commission, 10 Cir., 131 F.2d 105 (Anti-Fat Tablets—a formula including extract of Pokeberries and Bladder Wrack); Federal Trade Comm'n v. Raladam Co., 316 U.S. 149, 62 S.Ct. 966, 86 L.Ed. 1336 (a thyroid compound potentially harmful to health); American Medicinal Products v. Federal Trade Commission, 136 F.2d 426, 9 Cir., (Re-Duce-Oids, a thyroid compound), Marlene's, Inc. v. Federal Trade Commission, 7 Cir., 216 F.2d 556; (Mynex—a drug sold in conjunction with a diet plan); Bakers Franchise Corporation v. F. T. C., 302 F.2d 258, 3 Cir., (Lite-Diet Bread—an allegedly low-calorie bread that in fact was only sliced thinner than other bread); Damar Products, Inc. v. United States, supra, 309 F.2d 323 (an oscillating machine sold in conjunction with a diet plan).