Sydney N. **FLOERSHEIM**, an individual trading and doing business as Floersheim Sales Company and National Research Company, Petitioner,

v.

**FEDERAL TRADE COMMISSION**, Respondent.

No. 22733.

United States Court of Appeals Ninth Circuit.

May 28, 1969.

Rehearing Denied June 26, 1969.

Murray M. Chotiner (argued), and James A. Schmiesing, Newport Beach, Cal., for petitioner.

Alvin L. Berman (argued), Atty., James McI. Henderson, Gen. Counsel, J. B. Truly, Asst. Gen. Counsel, Washington, D. C., for respondent.

Before BARNES and ELY, Circuit Judges, and SOLOMON,* District Judge.

SOLOMON, District Judge:

Sydney N. Floersheim [1] seeks review of a cease and desist order of the Federal Trade Commission. Floersheim sells forms designed to help creditors collect debts. The Commission found the forms deceptive and misleading because they appeared to come from an official source, or from a third party other than the creditor.

Floersheim sells "Payment Demand" and "skip-tracer" forms. Most of the forms are printed on IBM cards. Some of the cards are punched with holes. Many forms are green or beige, others are white. Floersheim lives in and sells his forms from Los Angeles. When a purchaser orders a particular form, it is sent to him and he fills in the name and address of the debtor or other person from whom information is sought. The form is then sent to Floersheim's Washington, D. C., office, and from there mailed to the debtor (or other person) in a brown window envelope. Some of these envelopes state: "The Form Enclosed is Confidential No One Else May Open," and "Postmaster After 5 Days Return to 748 Washington Bldg., Washington, 5, D.C." The envelopes are postmarked Washington, D. C.

The Payment Demand form tells the debtor to pay his debt. One type of Payment Demand form says:

"You have 10 days to pay the amount of $.......... on the claim of ................. You are scheduled to appear in the CREDITOR'S OFFICE, located at ............... in the city of .......... State of .......... on or before two o'clock in the afternoon of the ...... day of .........., 19.. to pay the balance requested or give satisfactory reasons in PERSON why the AMOUNT has not been paid. IF MAILING PAYMENT TO CREDITOR REFER TO FILE No. ............."

In a box, in bolder print, are the words, "This Demand is made to give you a last opportunity to pay before action is taken on said claim." Arrows point to this statement. At the bottom of the form, in larger letters, is "NOTICE MAILED

---

* Honorable Gus J. Solomon, United States District Judge, District of Oregon, sitting by designation.

1. Prior cases involving the same petitioner are Mohr v. Federal Trade Commission, 272 F.2d 401 (9th Cir. 1959), and In re Floersheim, 316 F.2d 423 (9th Cir. 1963).

FROM WASHINGTON, D. C., BY PAYMENT DEMAND"

Many of the Payment Demand forms also state, in bold type:

"Subject to the Law of the ...................................
A Creditor may request an Attorney-at-Law to attach after Judgment Property such as Automobile, Jewelry, Boat, Live Stock, Crops, Machinery, House, Real Estate, Bank Account, Bank Vault, Stocks, Bonds, and Earnings, Commission or Salary."

---

Other Payment Demand forms tell the debtor to "Take Notice that the above named Creditor claims a just indebtedness from ..........." The words "Take Notice" are in an elaborate type. One form is called "Final Demand for the Payment of Debt" and warns the debtor that "This Demand is made to give you a last opportunity. to pay and to lay a foundation for action on said claim if the same is not paid within the time aforesaid." Some Payment Demand forms contain a questionnaire with instructions to "Complete questionnaire on reverse side unless full payment enclosed." The questionnaire seeks the husband's and wife's employment status and directs "All answers must be current and must be printed and returned at once." None of the Payment Demand forms, except the one containing the questionnaire, has a disclaimer of government connection.

There are several skip-tracer forms. They all seek information to be sent to Floersheim in a brown, pre-stamped envelope. These envelopes are addressed to "CHANGE OF ADDRESS," "CLAIMANT'S INFORMATION QUESTIONNAIRE," or "CURRENT EMPLOYMENT RECORDS" in Washington, D. C. One variety of skip-tracer form, sent to a person other than the debtor, requests "answers to all questions on the reverse side of this form, pertaining to the subject." The addressee is directed to answer within five days. Another skip-tracer form states in bold letters: "YOU HAVE CHANGED EMPLOYERS. COMPLETE QUESTIONNAIRE AND RETURN TO 748 WASHINGTON BLDG. WASHINGTON, D. C." The addressee is directed to "ANSWER ALL QESTIONS ON REVERSE SIDE OF THIS FORM." Follow-up forms direct the debtor to "Give reasons here why first form was not returned as requested."

Another skip-tracer form is called "CLAIMANT'S INFORMATION QUESTIONNAIRE." It is printed on beige paper which looks and feels like check paper. It seeks the debtor's address, employer, and bank reference among other things. It states: "Caution The Questions Below CANNOT be Answered By Anyone Other Than: Addressee."

The skip-tracer forms contain the following disclaimer, in small type, "The purpose of this card is to obtain information concerning a delinquent debtor, and to further advise that this is not connected in any way with the United States Government."

The Commission concluded that petitioner's forms and envelopes "are misleading, create the impression that they come from the government or some other official source or third party, rather than from the creditor, and that they have the capacity and tendency to deceive those to whom they are sent." The Commission found that the envelopes simulate ones used by the United States Government. In reviewing the skip-tracer forms the Commission said:

"We also find that the skip-tracer forms used by respondent are deceptive. Without purporting to be an exhaustive catalog we find that among other factors their general appearance and similarity to government checks, the use of fictitious names such as

'Claimant's Information Questionnaire' or just 'Questionnaire', the prominent use of respondent's address, 748 Washington Building, Washington, D. C., on the forms and on the reply envelopes, the peremptory nature of the requests for information, and the statement on the 'Claimant's Information Questionnaire' asking the recipient to 'Fill in this form for identification to aid collection in full for claimant,' combine to conceal the true purpose of the request. [Footnotes omitted.]"

The Commission did not believe the disclaimer dispelled this subterfuge.

"The examiner's finding that the recipients of such forms are often people of low income having minimal formal education is amply supported by evidence in the record and finds independent corroboration in the Commission's extensive experience with this type of form. Such persons would be unlikely to notice respondent's inconspicuous disclaimer or to understand its import. [Footnote omitted.]"

The Commission also found the Payment Demand form deceptive.

"Sent, like the skip-tracer forms, in the brown window envelopes, these forms are also frequently directed to debtors who are uneducated or illiterate. While it is by now a commonplace that testimony as to actual deception or capacity to deceive is not essential, the present record contains substantial testimony by debtors, well-educated as well as illiterate, and persons familiar with legal problems of the poor, indicating that the Payment Demand forms have the capacity to deceive, and have in fact deceived, persons to whom they are sent. [Footnote omitted.]"

The Commission found that repetition of the words "Washington, D. C.," the use of "elaborate type styles on several forms to simulate legal documents," and the overall format of the material "exploit the assumption of many low income debtors that anything emanating from

Washington, D. C., comes from the government * * *"

The Commission also found that the vague references to state laws permitting attachment of various types of property had a tendency to deceive. "[T]he general statement on respondent's forms fails to take into account numerous variations in state law * * *" The Commission concluded "that the sole purpose of including this catalog of creditors' rights is to intimidate and deceive the debtor, rather than to inform him of the legal rights of his creditor."

The Commission ordered Floersheim to stop using words like "Claimant's Information Questionnaire," "Current Employment Records," "Change of Address," and "Payment Demand." The order also requires Floersheim to place on his forms, in type as large as the largest type (exclusive of captions), the fact that the United States Government is not interested in the debt and that the sole purpose of the form is to get information in order to collect a delinquent debt. Floersheim is prohibited from using forms that simulate government documents or which give the impression a third party, other than the creditor, is interested in the debt.

The Commission's order required that the identity of the creditor must be prominently revealed on all forms. Creditors' rights must not be misstated and, where creditors' rights after judgment are stated, the form must also disclose that prior to judgment the debtor will have an opportunity to defend in a court of law.

Similar restrictions are imposed on the use of envelopes. In addition, if an envelope contains a Washington, D. C. return address, the identity of the creditor and the fact that the United States Government has not sent the envelope must appear in type as large as the largest type on the envelope. No envelope may contain a statement of confidentiality.

Finally, Floersheim may not represent to prospective purchasers of his forms

that his Payment Demand form is approved by the Commission or misrepresent approval of any of his envelopes, forms and material.

■ Petitioner argues that his forms and envelopes do not deceive. The Commission found that they do and that decision is supported by substantial evidence. Federal Trade Commission v. Colgate-Palmolive Co., 380 U.S. 374, 85 S.Ct. 1035, 13 L.Ed.2d 904 (1965); Stauffer Laboratories, Inc. v. Federal Trade Commission, 343 F.2d 75 (9th Cir. 1965); De Gorter v. Federal Trade Commission, 244 F.2d 270 (9th Cir. 1957).

■ Petitioner contends there is no deception because deception requires injury, and here there is no injury because all the debtors owe the money. There is no merit in this contention. Deception itself is the evil the statute is designed to prevent. Federal Trade Commission v. Colgate-Palmolive Co., supra; Feil v. Federal Trade Commission, 285 F.2d 879, 896 (9th Cir. 1960). There is also no merit in Floersheim's contention that even if there is injury, it occurs after the form has ceased to be in commerce. Wickard v. Filburn, 317 U.S. 111, 63 S.Ct. 82, 87 L.Ed. 122 (1942).

■ Floersheim argues that the Commission's order is unreasonable, arbitrary and capricious and also denies him due process. He claims the Commission lost jurisdiction because its order goes beyond what is necessary to prevent deception in commerce. In Carter Products, Inc. v. Federal Trade Commission, 268 F.2d 461, 498 (9th Cir. 1959), we said the Commission has prime responsibility to fashion an order that will eliminate the deceptive practices disclosed by the record. "Only in cases where the remedy selected has no reasonable relation to the unlawful practices found to exist, should a reviewing court interfere." We believe the remedy in this case is reasonably calculated to end the deception. The fact that it may impose more control than essential is not fatal. Federal Trade Commission v. National Lead Co., 352 U.S. 419, 431, 77 S.Ct. 502, 1 L.Ed.2d 438 (1957). The Commission may justifiably believe Floersheim's present and prior activities (see footnote 1) require its present order.

Floersheim claims the complaint did not give him notice that he was being charged with misrepresenting that a third party, other than the creditor, was interested in the debt. We have reviewed the complaint and the hearing, and we conclude that Petitioner had adequate notice of this charge.

■ Petitioner claims the Commission erred by filing a complaint against him instead of reopening prior proceedings involving his business. We do not believe Petitioner has a vested right to a reopening. He has shown no prejudice as a result of the Commission's procedure. In addition, the complaint charged an additional deception beyond those involved in prior cases, and in this situation a new complaint is clearly proper. Exposition Press, Inc. v. Federal Trade Commission, 295 F.2d 869, 872 (2d Cir. 1961).[2]

We reject Petitioner's argument that public policy requires that he be permitted to continue practicing his business in the same manner.

The Order of the Commission is affirmed and ordered enforced.

---

2. Petitioner cites Elmo Division of Drive-X Co. v. Dixon, 121 U.S.App.D.C. 113, 348 F.2d 342 (1965). There the Court required the Commission to proceed against Elmo by reopening because a prior consent decree, binding on the Commission, required that procedure. No similar situation exists here.