TRANS WORLD ACCOUNTS, INC., a California Corporation, and Floyd T. Watkins, Appellants,

v.

FEDERAL TRADE COMMISSION, Appellee.

No. 78–1398.

United States Court of Appeals, Ninth Circuit.

March 29, 1979.

Kirt Zeigler (argued), Robert Disharoon, of Santa Rosa, Cal., for appellants.

Alfred Lindeman, San Francisco, Cal., Ernest J. Isenstadt (argued), San Francisco, Cal., for appellee.

Before DUNIWAY and SNEED, Circuit Judges, and KELLEHER,* District Judge.

KELLEHER, District Judge:

Trans World Accounts, Inc., a debt collection agency operating in a number of western states, and its president, Floyd T. Watkins, appeal from a FTC order prohibiting certain practices used in their collection operations.

The Commission challenges Trans World's "flat rate" collection service. Under the flat rate service, Trans World mails out a series of five or six form letters to delin-

* Honorable Robert J. Kelleher, United States District Judge, Central District of California, sitting by designation.

quent debtors, encouraging prompt payment to the creditor. The letters are sent at prearranged intervals of ten to fourteen days. The letters state that legal action may be initiated immediately against the debtor if payment is not made within a specified period. If an alleged debtor does not respond to one letter in the series, the next letter is automatically sent until the series of five or six letters has run its course. If the flat rate series is concluded without payment or contact by the recipient, the account may be transferred to Trans World's percentage collection division, at which time Trans World examines the details of the particular account to determine whether or not further action should be taken. Thus, from the date of receipt of the first letter, it is usually about 90 days before Trans World even considers whether legal action should be taken against any individual debtor.

The FTC issued an administrative complaint on September 20, 1975, charging Trans World and Watkins with the commission of unfair and deceptive practices in violation of Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45. The complaint alleged that the letters misrepresented the imminence of legal action, and that the letters were deceptive in format because they were made to look like Western Union Telegrams or Mailgrams.[1] The administrative law judge ("ALJ") entered an initial decision sustaining the allegations of the complaint.

Trans World and Watkins appealed the decision to the FTC. On October 25, 1977, the FTC adopted, in large measure, the findings and conclusions of the ALJ. The Commission deleted the ALJ's proposed fourth paragraph barring all misrepresentations in debt collection, and also modified the third paragraph of that order. Trans

World and Watkins are now appealing, claiming that there was not substantial evidence to support the findings of the Commission, and that paragraphs 2 and 3 of the order are unconstitutionally vague and overbroad. We hold that there is substantial evidence to support the Commission's findings, but that the third paragraph of the Commission's order is overbroad and vague. Accordingly, we affirm in part and reverse and remand in part.

### Authority of the FTC

■ We note initially that the FTC has the authority to consider the questions herein presented. Section 5 of the Federal Trade Commission Act proscribes, *inter alia*, "unfair [and] deceptive acts or practices in or affecting commerce." 15 U.S.C. § 45(a) (1970). The deceptive acts or practices forbidden by the Act include those used in the collection of debts. *See, e. g., Floersheim v. FTC*, 411 F.2d 874 (9th Cir. 1969), *cert. denied*, 396 U.S. 1002, 90 S.Ct. 551, 24 L.Ed.2d 494 (1970).

■ Proof of actual deception is unnecessary to establish a violation of Section 5. Misrepresentations are condemned if they possess a tendency to deceive. *See, e. g., Resort Car Rental System, Inc. v. FTC*, 518 F.2d 962, 964 (9th Cir.), *cert. denied sub nom. MacKenzie v. United States*, 423 U.S. 827, 96 S.Ct. 41, 46 L.Ed.2d 42 (1975). The Commission has the discretion to interpret the meanings of various communications and the "impressions they would likely make upon the viewing public." *Libbey-Owens-Ford Glass Co. v. FTC*, 352 F.2d 415, 417 (6th Cir. 1965). The Commission may draw its own inferences regarding the likelihood of deception based upon the representations before it. *Stauffer Labs., Inc. v. FTC*, 343 F.2d 75, 78 (9th Cir. 1965).

---

1. Trans World had used letter formats that closely resemble Western Union Telegrams and Mailgrams. Trans World's "Telegram" consisted of a yellow window envelope on which was printed a return address with no name. The word "Telegram" was printed in large black type over the window and on the reverse side of the envelope. A yellow printed form, headed by the word "Telegram," was inserted

in the envelope. Unlike a Western Union telegram, the Trans World communication was sent through the regular mail. In 1975, Trans World stopped using the Telegram and began to use what it called a "Trans-O-Gram." The Trans-O-Gram was a blue and white envelope containing a form message printed by a computer.

*Format of the Letters (Paragraph 2)*

Appellants object to paragraph 2 of the FTC's order which prohibits Trans World from "using or placing in the hands of others for use, envelopes, letters, forms, or any other materials which by simulating telegrams or other methods or forms or types of communication misrepresent the nature, import, or urgency of any communication." Appellants maintain that the letter series contain no misrepresentation. Rather, they assert that the letters are urgent because businesses have a genuine interest in the prompt collection of debts. Appellants also argue that the FTC order is overbroad and vague in that it does not specify whether Trans World's use of the Trans-O-Gram format violates the order.

The scope of appellate review of factual findings made by the FTC is narrow. Section 5(c) of the FTC Act states that "findings of the Commission as to the facts, if supported by evidence, shall be conclusive." As this Court has noted:

> Findings of fact cannot and will not be set aside if the evidence in the record reasonably supports the administrative conclusion, even though suggested alternative conclusions may be equally or even more reasonable and persuasive. The findings must stand unless they [are] wrong, and they cannot be wrong—that is reversibly wrong—if substantial evidence supports them.

*Ash Grove Cement Co. v. FTC*, 577 F.2d 1368, 1378 (9th Cir. 1978), *quoting, Colonial Stores, Inc. v. FTC*, 450 F.2d 733, 739–40 (5th Cir. 1971).

The precise boundaries of "substantial evidence" are often elusive. With respect to appellate review of the findings of the Federal Trade Commission, "[s]ubstantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *RSR Corp. v. Federal Trade Commission*, (9th Cir. Jan. 8, 1979, docket no. 77–1413, Slip Op. 74 at 77),

quoting *Consolo v. Federal Maritime Commission*, 383 U.S. 607, 620, 86 S.Ct. 1018, 16 L.Ed.2d 131 (1966). *See also, Consolidated Edison Co. v. National Labor Relations Board*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938) (more than a mere scintilla; relevant evidence which a reasonable mind might accept to support conclusion); *International Association of Machinists v. National Labor Relations Board*, 71 App.D.C. 175, 181, 110 F.2d 29, 35 (1939), *aff'd*, 311 U.S. 72, 61 S.Ct. 83, 85 L.Ed. 50 (1940) (it is only convincing evidence, not lawyers' evidence); *National Labor Relations Board v. Remington Rand, Inc.*, 94 F.2d 862, 873 (2d Cir. 1938) (evidence on which responsible persons are accustomed to rely).

■ In making his findings of fact, the ALJ listened to all the testimony and reviewed all the exhibits on file. His findings of deception are supported by relevant evidence that a reasonable mind might accept as adequate to support a conclusion. Accordingly, they will not be overturned on appeal.

■ Trans World's contention that the second paragraph of the FTC order is overbroad and vague has no merit. Addressing the overbreadth issue, the FTC has authority to frame an order which extends beyond the immediate facts of the decided case. *Jacob Siegel Co. v. FTC*, 327 U.S. 608, 66 S.Ct. 758, 90 L.Ed. 888 (1946); *Fedders Corp. v. FTC*, 529 F.2d 1398 (2d Cir. 1976), *cert. denied*, 429 U.S. 818, 97 S.Ct. 63, 50 L.Ed.2d 79. These "fencing in" provisions are needed to prevent similar and related violations from occurring in the future. *FTC v. Mandel Bros.*, 359 U.S. 385, 79 S.Ct. 818, 824, 3 L.Ed.2d 893 (1959). With respect to vagueness, the record indicates that both the ALJ and the Commission addressed the question of whether paragraph 2 would apply to the Trans-O-Gram. Both concluded that it did.[2]

2. The administrative law judge stated that the use of the Trans-O-Gram was not challenged in the complaint, and thus he was not required to determine its validity. Yet, after he held the

telegram format deceptive and violative of the FTC Act, the judge stressed that the essence of his comments about the telegram applied to the subsequent Trans-O-Gram format as well. The

■ In summary, substantial evidence supports the Commission's findings that the telegram and the Trans-O-Gram formats are deceptive under Section 5 of the FTC Act. Both the ALJ and the Commission have expressly indicated an intent to proscribe the Trans-O-Gram format. Given the power vested in the FTC, *FTC v. Mandel Bros., supra,* and the specificity of its decision, we hold that the second paragraph of the Commission's order is neither overbroad nor vague.

### The Content of the Letters (Paragraph 3)

■ The Commission found that the letters sent by Trans World were deceptive in that they threatened imminent legal action when no such action was contemplated: even when the letter series had been completed, legal action would not be taken until an evaluation of the individual file had been made. This factual finding will not be overturned if there is substantial evidence supporting it. *Ash Grove Cement Co., supra.* Upon reviewing the evidence here, we find that there is substantial evidence to support the Commission's findings.[3] Nonetheless, we remand paragraph 3 of the FTC order for further consideration because it is overbroad and vague.

Paragraph 3 of the order prohibits appellants from "[m]isrepresenting directly or by implication, that legal action with respect to an alleged delinquent debt has been, is about to be, or may be initiated, or otherwise misrepresenting in any manner the likelihood or imminency of legal action." In delineating the parameters of the order, the Commission stated:

Respondents should not state or imply that legal action may be taken unless they can demonstrate from their experience that suit is the ordinary response to nonpayment. . . . Suit in more than half the instances of nonpayment will suffice under this order to substantiate a claim that legal action may be taken.

FTC Decision and Order at 12. This interpretation of the meaning of the word "may" is overly restrictive because it attributes to the word a statistical meaning counter to common sense and usage.

■ Thus, although appellant's communications have been found to be deceptive, and although that factual finding is supported by substantial evidence, cease-and-desist orders must be sufficiently "clear and precise to avoid raising serious questions as to their meaning and application." *FTC v. Henry Broch & Co.,* 368 U.S. 360, 367–8, 82 S.Ct. 431, 436, 7 L.Ed.2d 353 (1962). The Federal Trade Commission's power to fashion remedies for deceptive practices does not carry with it the concomitant power to be deceptive or ambiguous in dealing with persons and businesses subject to its jurisdiction. Here, appellant acts at its peril if its common-sense definition of the word "may" fails to comport with the statistical interpretation which the FTC urges.

FTC opinion was even more explicit. The Commission stated: Respondents (Trans World) ask . . . whether the second paragraph of the order prohibits their use of the Trans-O-Gram format. For purposes of assisting them in interpreting the order, we reiterate the answer of the Administrative Law Judge: 'Yes' ".

3. By way of example, the following three paragraphs were contained in three of the letters in the letter series which Trans World sent:

1. Urgent—Appear at Claimant's Office within four days to pay above claim or protest liability. Failure to appear in person or have legal counsel represent you may result in immediate litigation by our client with ultimate seizure of property, auto, bank accounts and other personal assets if judgment is obtained.

2. You are hereby directed to appear at our client's office at 9:00 a. m. next Tuesday to protest liability of the above claim. Failure to comply may result in immediate commencement of litigation by our client. If judgment is granted, property, including monies, automobile, credits and bank deposits now in your possession could be attached. If our client receives payment in full prior to the time of protest as scheduled, your appearance will not be required.

3. Urgent—Immediately contact our client and make arrangements for payment. Imperative to avoid further action which may be taken against you under provisions of state statutes. If settlement is not made within 5 days after receipt of this telegram, you may wish to consult your attorney regarding your legal liability.

We recognize that the FTC may order certain "fencing in" provisions. *FTC v. Mandel Bros., supra.* Although we are certain that the FTC could draft an appropriate "fencing in" order, paragraph 3 is not such an order. It is not needed to prevent similar and related violations from occurring in the future: the very nub of the deception, in this case, was not whether appellant sued 50 percent of the time, 75 percent of the time, or 25 percent of the time. Rather, the deception arose from the fact that *no* decision regarding suit was made until 90 days following mailing of the last Trans-O-Gram, although appellant represented that such a decision was automatic.

To conclude, paragraph 3, as presently drafted, is overbroad and vague. Accordingly, we remand that portion of the order for further clarification by the Commission.

The order of the Federal Trade Commission is affirmed in part, and reversed and remanded in part for further proceedings in accordance with this Opinion. Pursuant to F.R.App.P., Rule 19, the Commission shall serve and file a proposed judgment in conformity with this Opinion.

SNEED, Circuit Judge (concurring):

1. In response to Trans World's request for guidance as to the meaning of paragraph 3, the Commission provided the following:

   [R]eferences to legal action must be carefully and selectively employed to avoid deception. Respondents should not state or imply that legal action *will* be taken unless they indeed take such action in *all* cases wherein the threat of legal action is not met by payment. *Helix Marketing Corporation, et al.,* 83 FTC 514 (1973). And respondents should not state or imply that legal action *may* be taken unless they can demonstrate from their experience that suit is the *ordinary* response to nonpayment. Cf. Fair Debt Collection Practices Act, Pub.L. No. 95–109, § 805(c)(2); 15 U.S.C. § 1692c (1977). For purposes of the guidance respondents have solicited, suit in more than half the instances of nonpayment will suffice under this order to substantiate a claim that legal action may be taken, *Helix Marketing Corp., supra.*

   In complying with the foregoing standard, respondents would do well to treat discernible classes of alleged debtors differently, depending upon the likelihood that members of

I concur in Judge Kelleher's opinion. With respect to the content of the letters (Paragraph 3) I wish to add these comments. To refer to the *possibility* of litigation, when at the time such possibility exists, is not, I believe, a deceptive practice. To suggest that it is, except when the chance of litigation is slightly better than even, is to circumscribe truth unreasonably rather than to extirpate falsehood. I am not convinced that Congress so intended to censor truth in legislation designed to protect the consumer from falsehood. To bar from the eyes of consumers certain truths because of their supposed intimidatory potential underestimates the consumers' fortitude and demeans their intelligence.

DUNIWAY, Circuit Judge (concurring and dissenting):

I concur in Judge Kelleher's opinion, except for that part of it which remands paragraph 3 of the Commission's order for further consideration. I think that paragraph 3 is well within the powers of the Commission. In response to Trans World's complaints about the vagueness of paragraph 3, the Commission has included guidelines in its opinion.[1] I submit that

each class will be sued. Unsatisfied claims of a particular client or clients should not be lumped together for the purpose of establishing that legal action is taken in more than 50 percent of all cases where it is the practice to treat different classes of claims in different ways. For example, there is record testimony suggesting that claims below a certain small amount are not ordinarily pursued by some creditors in court. (Tr. 78–79). If that is the practice then letters used to collect such small debts should not contain references to legal action (except in a particular case where the file has been reviewed and a decision to sue has been made.) On the other hand, if it is true, as respondents' counsel indicated at oral argument, that it is the corporate policy of some clients to pursue nearly all unsatisfied claims, even small ones, through the courts, references to the possibility of eventual legal action would be appropriate in a series of letters drafted for such clients.

Distinguishing among discernible classes of debtors can also provide a way for respon-

they give Trans World more freedom to deceive than it is entitled to demand. Trans World's series of letters would be misleading and deceptive even if it could demonstrate that "suit in more than half the instances of nonpayment" would occur. Its series of communications is artfully phrased to instill in the debtor a belief, indeed, a fear, that if he does not promptly respond, legal action against him will follow immediately, with dire consequences to him. It is true that the papers do not flatly or literally say so, but that is the strong impression that they are intended to convey, and do convey. The Supreme Court has more than once recognized that ". . . much commercial speech is not provably false, or even wholly false, but only deceptive or misleading." *Friedman v. Rogers*, 1979, —— U.S. ——, at ——, 99 S.Ct. 887, 894, 59 L.Ed.2d 100, 110, quoting from *Virginia State Board of Pharmacy v. Virginia Citizens Consumer Council*, 1976, 425 U.S. 748 at 771–72, 96 S.Ct. 1817, 48 L.Ed.2d 346. *See also, Bates v. State Bar of Arizona*, 1977, 433 U.S. 350, 383, 97 S.Ct. 2691, 53 L.Ed.2d 810. In each case, the Court saw no obstacle to a legislature's dealing with that problem. *See also, Young v. American Mini Theatres*, 1976, 427 U.S. 50, 68, 96 S.Ct. 2440, 2451, 49 L.Ed.2d 310: ". . . regulatory commissions may prohibit businessmen from making statements which, though literally true, are potentially deceptive." *See also,* n.31 at page 69, 96 S.Ct. 2440. To the same effect is *Simeon Management Corp. v. F. T. C.*, 9 Cir., 1978, 579 F.2d 1137, 1145, 1146. *See also, Securities and Exchange Commission v. C. R. Richmond & Co.*, 9 Cir., 1977, 565 F.2d 1101, 1106–107, where we held that "advertisements were 'deceptive and misleading *in their overall effect* even though when narrowly and literally read, no single statement of a material fact was false,'" (emphasis in original), quoting from *Spear & Staff, Inc.*, 42 S.E.C. 549 (1965). We have more than once held that "advertising capable of being interpreted in a misleading way should be construed against the advertiser." *Resort Car Rental Systems, Inc. v. F. T. C.*, 1975, 518 F.2d 962, 964. *Accord, Simeon Management Corp. v. F. T. C., supra*, 579 F.2d at 1146. I submit that these principles are applicable here. ·

The views expressed by Judge Sneed in his concurrence have never been adopted by the Supreme Court or by this court; they are contrary to views often expressed by this court. They are also contrary to facts of which we can take judicial notice. P. T. Barnum is said to have remarked about the suckers whom he lured into his sideshows with extravagant advertising that "there is one born every minute." The reports of F.T.C. decisions in the field of misleading and deceptive advertising bulge with examples that verify Barnum's observation. The depths of the gullibility of a large slice of the American population have never been fully plumbed. We read in the newspapers almost daily of the successful operation of the old Spanish pigeon drop.

It should be remembered that many of the debtors to whom Trans World's communications go will be ignorant and trusting persons of modest means who have been persuaded by high powered hacks, quacks or flacks to incur indebtedness that they should never have incurred, for goods and services for which they have no need or use, and for which they cannot afford to pay. The successful operation of Trans World's

---

dents to make mention of possible legal action in a non-deceptive fashion where it might otherwise be improper. For example, when serving a creditor whose policy is to sue infrequently, respondents might nonetheless be able to make non-deceptive mention of possible legal action in some cases by separating out a class of claims that their non-litigious client would ordinarily pursue (for example, bad checks written for large amounts.) In all instances, however, respondents when making any reference to possible legal action must avoid misrepresentation of its imminence. References to specific deadlines by which payment must be made or references to the need for haste, urgency, immediate action or whatever, coupled with references even to tentative legal action, will inevitably convey the impression that legal action impends. Such an approach is wholly improper in a series of form letters that are mailed over a period of weeks or months without any determination to sue in any particular case having been made.

scheme depends upon the ignorance and gullibility of the recipients of its communications. It could easily comply with the Commission's order if it chose to do so. It does not want to do so because compliance would take the sting out of its communications and defeat their purpose.

I am reminded of the story of the company officers who asked attorney Louis D. Brandeis how to comply with the Sherman Act. His reply was, that he could not tell them how to avoid falling off a cliff if they persisted in walking along the edge, but that he could tell them how to stay away from that edge. Trans World wants to walk the edge; so it splits hairs about the significance of "may." As the Court said in *F. T. C. v. Colgate-Palmolive Co.*, 1965, 380 U.S. 374 at 393, 85 S.Ct. 1035, 1047, 13 L.Ed.2d 904: "[I]t does not seem 'unfair to require that one who deliberately goes perilously close to an area of proscribed conduct shall take the risk that he may cross the line,'" citing *Boyce Motor Lines, Inc. v. United States*, 1959, 342 U.S. 337, 340, 72 S.Ct. 329, 96 L.Ed. 367.

This court has repeatedly made it clear that a purpose of the Federal Trade Commission Act is to protect "that vast multitude which includes the ignorant, the unthinking and the credulous." *Standard Oil Co. of California v. F. T. C.*, 9 Cir., 1978, 577 F.2d 653, 657; *Stauffer Laboratories, Inc. v. F. T. C.*, 9 Cir., 1965, 343 F.2d 75, 83. Similarly, we have held that ". . . the public is not under any duty to make reasonable inquiry into the truth of advertising." *Resort Car Rental Systems, Inc. v. F. T. C.*, supra, 518 F.2d at 964. That principle is applicable here.

. The Supreme Court and this court have also repeatedly held that the Commission has a very broad discretion in framing its orders for the purpose of preventing further deception of the public. *F. T. C. v. Colgate-Palmolive Co.*, supra, 380 U.S. at 392–93, 85 S.Ct. 1035; *F. T. C. v. Mandel Brothers, Inc.*, 1959, 359 U.S. 385, 392–93, 79 S.Ct. 818, 3 L.Ed.2d 893; *Jacob Siegel Co. v. F. T. C.*, 1946, 327 U.S. 608, 611–13, 66 S.Ct. 758, 90 L.Ed. 888; *Simeon Management*

*Corp. v. F. T. C.*, supra, 579 F.2d at 1147; *Resort Car Rental Systems, Inc. v. F. T. C.*, supra, 518 F.2d at 964.

I think that paragraph 3 of the Commission's order is well within the Commission's discretion, and that it is neither overbroad nor impermissibly vague. Moreover, as the Court pointed out in *F. T. C. v. Colgate-Palmolive Co.*, supra, 380 U.S. at 394, 85 S.Ct. at 1047–1048: "If, however, a situation arises in which [Trans World is] sincerely unable to determine whether a proposed course of action would violate the . . . order, [it] can, by complying with the Commission's rules, oblige the Commission to give [it] definitive advice as to whether [its] proposed action, if pursued, would constitute compliance with the order." As is shown in footnote 1, *supra*, Trans World has already received considerable definitive advice of this kind.

It seems to me that both Judge Kelleher's opinion and Judge Sneed's concurrence flout the foregoing principles in relation to paragraph 3. We have applied these principles in another debt collection case that is closely in point. *Floersheim v. F. T. C.*, 9 Cir., 1969, 411 F.2d 874, 878. We should apply them here.

I would uphold the Commission's order in toto.