SIMEON MANAGEMENT CORPORA-
TION et al., Petitioners,

v.

FEDERAL TRADE COMMISSION,
Respondent.

No. 76–2543.

United States Court of Appeals,
Ninth Circuit.

July 18, 1978.

Jerry S. Phillips (argued) of Grayson & Gross, Inc., Los Angeles, Cal., for petitioners.

David Fitzgerald (argued), Washington, D. C., for respondent.

Before WRIGHT and TANG, Circuit Judges, and BURNS,* District Judge.

BURNS, District Judge:

Petitioners ask the court to set aside a cease and desist order of the Federal Trade Commission (FTC or Commission) requiring them to make certain disclosures in their advertising. The Commission entered the order pursuant to its finding that, without such information, the advertisements were deceptive, unfair and false, in violation of sections 5[1] and 12[2] of the Federal Trade Commission Act (FTCA), 15 U.S.C. §§ 45, 52 (1976). *Simeon Management Corp., et al.*, 87 F.T.C. 1184, 1229 (1976).

We have jurisdiction under 15 U.S.C. §§ 45(c), (d). We decline to set aside or modify the order.

Petitioners are corporations and individuals engaged in the business of setting up, operating and promoting weight reduction clinics. They provide management and support services to the licensed physicians and nurses who administer the treatments offered by the clinics.

The clinics utilize the "Simeons" method for weight reduction. After an initial physical examination by a licensed physician, the patients are put on a four to six week treatment program which generally includes a 500 calorie per day diet, daily medical counseling and daily injections of human chorionic gonadotropin (HCG).

HCG is a prescription drug derived from the urine of pregnant women. The Federal Drug Administration (FDA) has declared that HCG is a new drug and has approved it for some uses,[3] but not for use in the

---

* Honorable James M. Burns, United States District Judge, District of Oregon, sitting by designation.

1. Section 5(a) of the FTCA, 15 U.S.C. § 45(a), provides:

   "(a)(1) Unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful.

   (2) The Commission is empowered and directed to prevent persons, partnerships, or corporations . . . from using unfair methods of competition in or affecting commerce and unfair or deceptive acts or practices in or affecting commerce."

   Section 5(b), 15 U.S.C. § 45(b), authorizes the FTC to issue complaints, hold hearings and issue cease and desist orders for violation of the FTCA.

2. Section 12 of the FTCA, 15 U.S.C. § 52, provides:

   "(a) Unlawfulness. It shall be unlawful for any person, partnership, or corporation to disseminate, or cause to be disseminated, any false advertisement—

   (1) By United States mails, or in or having an effect upon commerce, by any means, for the purpose of inducing, or which is likely to induce, directly or indirectly the purchase of food, drugs, devices, or cosmetics; or

   (2) By any means, for the purpose of inducing, or which is likely to induce, directly or

indirectly, the purchase in or having an effect upon commerce, of food, drugs, devices, or cosmetics.

   "(b) Unfair or deceptive act or practice. The dissemination or the causing to be disseminated of any false advertisement within the provisions of subsection (a) of this section shall be an unfair or deceptive act or practice in or affecting commerce within the meaning of section 45 of this title."

Section 15(a)(1) of the FTCA, 15 U.S.C. § 55(a)(1), defines "false advertisement" for the purpose of section 12 as:

   "an advertisement, other than labeling, which is misleading in a material respect; and in determining whether any advertisement is misleading, there shall be taken into account (among other things) not only representations made or suggested by statement, word, design, device, sound, or any combination thereof, but also the extent to which the advertisement fails to reveal facts material in light of such representations or material with respect to consequences which may result from the use of the commodity to which the advertisement relates under the conditions prescribed in said advertisement, or under such conditions as are customary or usual."

3. HCG has been approved as safe and effective for use in the treatment of cryptorchidism (undescended testicles) not due to anatomical obstruction, hypogonadism in males, if secondary

treatment of obesity. 39 Fed.Reg. 42397–403 (1974). FDA found that there is no substantial evidence that HCG is safe or effective for such use. 39 Fed.Reg. at 42397.

As one of the principal means of promoting the business of their weight reduction clinics, petitioners place advertisements in newspapers, magazines and on television. These advertisements represent that the treatment program utilized at the clinics is safe, effective and medically approved. Representative samples of the advertisements include:

1. Medically supervised weight loss. Lose weight safely, quickly and effortlessly through our proven weight reduction program developed by Medical Doctors and supervised by our Physicians and Nurses. Simeon Weight Clinics, its Doctors, Nurses and professionally trained staff, bring you a quick and safe way to melt away unwanted pounds. R. 6.

2. Serious weight loss is a doctor's business and the doctors and nurses at over 100 Simeons Weight Clinics are helping thousands of men and women lose unwanted pounds and inches quickly, privately and without strenuous exercise. Your weight loss, like your health, is a medical matter which belongs in the hands of a physician. R. 105.

3. Simeons takes the gamble out of reducing with medically supervised weight loss, Lose weight now . . . quickly . . . safely. R. 108.

The advertisements do not mention HCG or that injection of a drug may be part of the treatment program.

Petitioners' clinics were registered under the Knox-Mills Health Plan Act, 1965 Cal. Stats., c. 880, p. 2482, § 1 (repealed 1976). Pursuant to that Act, their advertisements were reviewed by the California Attorney General's Office prior to dissemination.

On October 15, 1974, the Commission commenced administrative proceedings against the petitioners by issuing a complaint. The complaint alleged that the petitioners' advertisements were deceptive, unfair and false because they failed to disclose that the treatments offered involved injection of HCG and that HCG was not approved by the FDA as safe and effective for use in weight control. *Simeon, supra,* 87 F.T.C. at 1193. It also alleged that the advertisements were unfair because they promoted a "costly" treatment involving the use of a drug which had not been approved by the FDA as safe and effective for such use. *Id.* The notice of contemplated relief accompanying the complaint indicated that the Commission might order petitioners to cease and desist advertising any weight reduction program involving the use of HCG or any other drug which is required to be and has not been approved by the FDA as safe and effective for such use. *See Id.* at 1224.

An administrative law judge held adjudicative hearings, at which thirteen witnesses testified, ten on behalf of petitioners. The administrative law judge ruled that the petitioners' advertisement of a weight reduction treatment program which included injection of a prescription drug not approved by the FDA as safe and effective for such use without disclosing the lack of approval was deceptive, unfair and false advertising. *Id.* at 1223. He did not find that petitioners had acted unfairly by advertising a "costly" treatment program which involved use of a drug not approved by the FDA for such use. Rather than ordering petitioners to stop advertising altogether, the administrative law judge ordered them to make specified disclosures[4] in further advertising. *Id.* at 1224–6.

Both sides appealed from the initial decision to the Commission. After considering oral arguments, the whole record and the

---

to pituitary deficiency, and some forms of infertility in females. 39 Fed.Reg. 42397–402 (1974).

4. The administrative law judge's cease and desist order also contained other provisions, from which the petitioners did not appeal.

parties' briefs, the Commission[5] also concluded that petitioners' advertisements were deceptive, unfair and false because of the failure to disclose specified information. *Id.* at 1230–1.

The Commission issued a final cease and desist order requiring the petitioners to disclose in any advertisements for the clinics or the treatment program that:

1) the weight reduction treatments involve injection of a prescription drug[6] which has not been approved by the FDA as safe and effective in the treatment of obesity or weight control, and

2) there is no substantial evidence that the drug increases weight loss beyond that resulting from caloric restriction, that it causes a more attractive or "normal" distribution of fat, or that it decreases the hunger and discomfort associated with calorie-restrictive diets. *Id.* at 1236.[7]

### I.

Another phase of this case has been here before. Concurrently with the filing of the administrative complaint against the petitioners, the Commission sought a preliminary injunction pending the outcome of the agency proceedings in order to stop petitioners from advertising their weight control treatments as long as the treatments involved the use of HCG or any other drug which had not been approved by the FDA for such use. The district court denied the Commission's request for a preliminary injunction. On appeal, we affirmed. *F.T.C. v. Simeon Management Corporation*, 391 F.Supp. 697 (N.D.Cal.1975), *aff'd*, 532 F.2d 708 (9th Cir. 1976).

The standard of review applicable at this stage of the proceedings is different from the standard applicable when the case was last before the court. When reviewing the district court's denial of the preliminary injunction, we pointed out that the denial would not be reversed unless the district court had based its decision upon an erroneous legal premise or had abused its discretion in balancing the equities and determining whether the FTC was *likely* to succeed on the merits. *Simeon, supra,* 532 F.2d at 711, 713–4.

■  The case now comes to us after completion of the full panoply of agency procedure specified by statute. Further, the case comes to us from an agency charged with the regulation of advertising. As a result of such regulation, the FTC has accumulated much expertise. We are not to lightly set aside agency action based on the exercise of such accumulated expertise merely because, were we trying the matter anew, we might reach a different result. We are not to set aside the Commission's action unless it is apparent that it is unsupported by substantial evidence, 15 U.S.C. § 45(c); 5 U.S.C. § 706(2)(E), or is arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law. 5 U.S.C. § 706(2)(A). *Feil v. F.T.C.,* 285 F.2d 879, 882–3 (9th Cir. 1960).

### II.

Petitioners urge six separate contentions.

1) Petitioners contend that we should reverse because there has been no purchase of the drug in question, and thus section 12 of the FTCA is inapplicable. See note 2 *supra.* This contention was rejected in the earlier injunction proceedings. *See Simeon, supra,* 532 F.2d at 711. We need not address it here because we hold that the FTC correctly found the advertisements in question to be "deceptive" within the meaning of the Act's section 5.

2) Petitioners contend that HCG is not a new drug within the meaning of the Federal Food, Drug and Cosmetic Act, 21 U.S.C. § 301 *et seq., as amended* (Supp. V, 1975) (FDCA), and hence does not need FDA

---

**5.** The three participating Commissioners rendered a unanimous decision.

**6.** The Commission deleted the specific reference to HCG from the administrative law judge's order.

**7.** The FDA requires all advertising and labeling for HCG to contain nearly identical disclosures. 39 Fed.Reg. at 42401–2.

approval. They base this contention upon the fact that the FDA has approved HCG for some medical uses.

"The term 'new drug' means—

(1) Any drug . . . the composition of which is such that such drug is *not generally recognized, among* experts qualified by scientific training and experience to evaluate the safety and effectiveness of drugs, *as safe and effective* for use under the conditions prescribed, recommended, or suggested in the labeling thereof . . . ." 21 U.S.C. § 321(p)(1) (Emphasis added.)

■ A new drug may not be introduced into interstate commerce unless an application has been filed with and approved by the FDA. 21 U.S.C. § 355(a). The FDA cannot approve a new drug application unless it finds that there is substantial evidence that the drug is effective for the labeled use. 21 U.S.C. § 355(d). Further, a drug can be generally recognized as effective only if that expert consensus is based upon substantial evidence that the drug is effective for the labeled use. *Weinberger v. Hynson, Westcott & Dunning,* 412 U.S. 609, 629–30, 632, 93 S.Ct. 2469, 37 L.Ed.2d 207 (1973).

In this context, substantial evidence means

"evidence consisting of *adequate and well-controlled* investigations, *including clinical* investigations, *by experts* qualified by scientific training and experience to evaluate the effectiveness of the drug involved, on the basis of which it could fairly and responsibly be concluded by such experts that the drug will have the effect it purports or is represented to have . . . ." 21 U.S.C. § 355(d); *Weinberger, supra,* 412 U.S. at 630, 93 S.Ct. 2469 (emphasis added).

FDA regulations set forth the essentials of an adequate and well-controlled clinical investigation. 21 C.F.R. § 314.111(a)(5)(ii).

Anecdotal evidence, such as testimonials by satisfied patients or statements by doctors that, based on their experience, they "believe" a drug is effective do not constitute adequate and well-controlled investigations and cannot, therefore, provide substantial evidence of effectiveness. *Weinberger, supra,* 412 U.S. at 618–19, 629–30, 93 S.Ct. 2469.

■ Although substantial evidence of effectiveness for the labeled use is required for a drug to be generally recognized as effective, such substantial evidence may exist long before the drug is generally recognized as effective for that use. *See Id.* at 629–32, 93 S.Ct. 2469. Thus, approval of a new drug application does not, alone, remove the approved drug from new drug status.

■ The FTC did not independently determine that HCG is a new drug when used for the treatment of obesity. It merely declined to challenge the FDA determination because the record before it lacked substantial evidence that HCG is effective for such use. *Simeon, supra,* 87 F.T.C. at 1232. Petitioners do not, and indeed could not, dispute the fact that the FDA has declared HCG to be a new drug when used for the treatment of obesity. The Commission's acceptance of the FDA determination is supported by the applicable legal precedents and substantial evidence on the record as a whole, and hence cannot be set aside. *See* 5 U.S.C. §§ 706(2)(A), (2)(E); 15 U.S.C. § 45(c).

■ The evidence [8] presented by petitioners consisted of testimonials by satisfied patients and statements [9] by doctors who use the "Simeons" method that they have concluded, on the basis of their experience, that HCG is safe and effective in the treatment of obesity. As noted above, such anecdotal evidence does not constitute substantial evidence. FTC counsel relied upon

---

8. In their brief, petitioners refer to evidence introduced in the district court injunction proceedings. Since we are now reviewing the Commission's action and not that of the district court, we are constrained to consider only the evidence before the Commission.

9. These statements were made in live testimony, affidavits and literature.

1) the FDA notice, which contained critical evaluations of the studies investigating the effectiveness of HCG in the treatment of obesity;

2) testimony from a California physician that his review of the medical literature revealed no scientific evidence that HCG is effective in the treatment of obesity; and

3) extensive testimony from the physician responsible for the medical content of the FDA notice on HCG. He testified about FDA drug regulation, new drug status, the requirements for approval of a new drug, available information on the safety and effectiveness of HCG and the conclusion of the FDA that there is no substantial evidence that HCG is safe and effective for use in the treatment of obesity.

Such evidence amply supports the FTC determination that the record before it lacked substantial evidence that HCG is safe and effective in the treatment of obesity. Without such substantial evidence in the record before the FTC, that agency would have no basis for challenging the FDA's determination that HCG is a new drug. *Cf. Weinberger, supra,* 412 U.S. at 629–30, 93 S.Ct. 2469.

3) Petitioners also contend that we should set aside the cease and desist order because, after reviewing the advertisements pursuant to the Knox-Mills Health Plan Act, the California Attorney General did not disapprove of their nature and contents. Petitioners argue that this failure to disapprove constitutes a prima facie determination that the advertisements are representative, fair and legal. They also argue that FTC regulation of their advertisements impermissibly interferes with the state regulation.

■ These contentions lack merit. Whether a state official has approved the advertisements or not is irrelevant to the operation of the federal regulatory scheme set forth in the FTCA. *See Royal Oil Corporation v. F.T.C.,* 262 F.2d 741, 743 (4th Cir. 1959); *cf. United States v. California,* 297 U.S. 175, 183–4, 56 S.Ct. 421, 80 L.Ed.

567 (1936). That scheme does not impermissibly intrude upon state regulation. *Cf. Double-Eagle Lubricants, Inc. v. State of Texas,* 248 F.Supp. 515, 517–18 (N.D.Tex. 1965), *appeal dismissed,* 384 U.S. 434, 86 S.Ct. 1601, 16 L.Ed.2d 670 (1966).

4) Petitioners contend that the FTC has no jurisdiction to encroach upon the confidential relationship between a physician and patient. They argue that, because HCG is administered by or under the supervision of a physician as part of the weight reduction program, the Commission has no jurisdiction to regulate the advertising used in promoting the clinics.

■ This contention also lacks merit. The Commission's order does not pretend to affect the right of a physician to prescribe or administer HCG for his or her patients as part of a course of weight reduction treatments. The order prevents petitioners from advertising their clinics and weight reduction program in a way which fails to disclose that the FDA has not approved HCG for such use and that there is no substantial evidence that HCG is effective in the treatment of obesity. The order in no way impinges upon the traditional physician-patient relationship. *See generally American Medical Ass'n v. U. S.,* 317 U.S. 519, 528–9, 63 S.Ct. 326, 87 L.Ed. 434 (1943).

5) Petitioners contend that Federal Trade Commission Rules of Practice § 3.43(a), 16 C.F.R. § 3.43(a), placed upon FTC counsel the burden of proving that petitioners' weight reduction program is unsafe and ineffective and that the FTC failed to carry that burden.

■ Petitioners' contention lacks merit. Section 3.43(a) provides that "the Commission . . . shall have the burden of proof, but the proponent of any factual proposition shall be required to sustain the burden of proof thereto." Petitioners' argument rests upon the proposition that, by charging that petitioners' advertisements are false, deceptive and unfair, the FTC asserts that the program is unsafe or ineffective. The complaint, however, did not allege, and the FTC was not required to

prove, that the weight reduction program is unsafe or ineffective.

■ Failure to disclose material information may cause an advertisement to be false or deceptive within the meaning of the FTCA even though the advertisement does not state false facts. 15 U.S.C. §§ 52, 55(a)(1); *cf. Brite Manufacturing Co. v. F.T.C.,* 120 U.S.App.D.C. 383, 347 F.2d 477 (1965); *Kerran v. F.T.C.,* 265 F.2d 246 (10th Cir.), *cert. denied,* 361 U.S. 818, 80 S.Ct. 61, 4 L.Ed.2d 64 (1959). This is the sort of falsity and deception charged.

6) Finally, petitioners contend that HCG has not been shown to be unsafe and ineffective when used in a comprehensive weight loss program and hence advertisements describing the program as safe and effective are not and cannot be found to be deceptive, false or unfair. This contention also lacks merit.

■ The Commission found that (1) some consumers will reasonably believe that the government exercises control over the promotion and use of prescription drugs; (2) this belief is intensified by the advertisements' representations that the weight loss treatments are safe, effective and medically approved; and (3) the representations may therefore reasonably lead consumers into the mistaken belief that the claims of safety and effectiveness are based, not on the advertiser's own opinion, but on a determination by the FDA. It further found that, in view of the public's belief that the government strictly regulates drugs, the fact that the treatments involve administration of a drug lacking FDA approval for such use may materially affect a consumer's decision to undergo the treatment. Accordingly, the Commission declared that the failure to disclose that the weight reduction treatments involve injection of a drug lacking FDA [10] approval for such use renders the advertisements deceptive and thus in violation of § 5 of the FTCA. *Simeon, supra,* 87 F.T.C. at 1230.

"[I]n the last analysis, the words 'deceptive practices' set forth a legal standard and they must get their final meaning from judicial construction." *FTC v. Colgate-Palmolive Co.,* 380 U.S. 374, 385, 85 S.Ct. 1035, 1043, 13 L.Ed.2d 904 (1965). Nevertheless, the courts must give great weight to the Commission's judgment. *Id.* This is particularly true in cases of alleged deceptive advertising, because such cases "necessarily require 'inference and pragmatic judgment'." *Resort Car Rental System, Inc. v. F.T.C.,* 518 F.2d 962, 963 (9th Cir. 1975), quoting *Colgate, supra,* 380 U.S. at 385, 85 S.Ct. 1035.

The need for the courts to defer to the Commission's judgment results in part from the statutory scheme and in part from the weight of accumulated agency expertise. The generality of the § 5 proscriptions "necessarily gives the Commission an influential role in interpreting § 5 and in applying it to the facts of particular cases arising out of unprecedented situations." *Colgate, supra,* 380 U.S. at 385, 85 S.Ct. at 1042. Determining whether a particular advertisement is deceptive requires a familiarity with the expectations and beliefs of the public, especially where the alleged deception results from an omission of information instead of a statement. The Commission has been engaged in making such determinations since 1938, when its jurisdiction was extended to include the prevention of unfair or deceptive acts or practices in commerce. *See Id.* at 384–5, 85 S.Ct. 1035. As a result, the Commission has accumulated extensive experience and is therefore generally in a better position than the courts to determine when a practice is deceptive within the meaning of the FTCA. *FTC v. Mary Carter Paint Co.,* 382 U.S. 46, 48, 86 S.Ct. 219, 15 L.Ed.2d 128 (1965); *Colgate, supra,* 380 U.S. at 385, 85 S.Ct. 1035.

---

**10.** The Commission appears to be plowing new ground through what might be called a piggyback process: the utilization of the finding of a sister agency as the underpinning for a finding that advertising brings about the substantive evils Congress sought to eradicate through the FTC processes. A finding of a sister agency, however, like any other fact or circumstance, may, under certain circumstances, be material information the omission of which could cause an advertisement to be deceptive.

This court has previously stated that advertisements "capable of being interpreted in a misleading way should be construed against the advertiser." *Resort Car, supra,* 518 F.2d at 964. According great weight to agency findings of deception furthers this principle.

In our opinion affirming the denial of injunctive relief in this case, we noted that there could be no deception unless the public holds a belief contrary to material facts not disclosed by the advertisement. *Simeon, supra,* 532 F.2d at 716. The Commission found that the advertisements could [11] reasonably lead consumers to believe that the claim of safety and effectiveness are based on a determination by the appropriate administrative agency. In view of the currently pervasive level of governmental regulation, particularly in the medical field, we cannot say that this determination is unreasonable, arbitrary, capricious or an abuse of discretion.

The advertisements represent that the Simeon program, as a whole, is safe and effective. Therein lies the crux of the material omission. The public is entitled to know that the "Simeon method" entails injection of a prescription drug that has not been found to be safe and effective in the treatment of obesity. The statements in the advertisements could lead the consumer to believe that HCG injections, which are a constant aspect of Simeon's course of treatment, have been determined to be safe and effective for weight reduction. This belief is contrary to fact. That the belief is attributable in part to factors other than the advertisement itself does not preclude the advertisement from being deceptive. *Cf. Brite, supra,* 347 F.2d at 477.

Once the Commission has found an advertisement to be deceptive, it is authorized, within the bounds of reason, to infer that the deceptive information would be a material factor in the consumer's decision to buy. *Colgate, supra,* 380 U.S. at 392, 85 S.Ct. 1035. The Commission found that the fact that the advertised treatments involve administration of a drug lacking FDA approval for such use might materially affect the consumer's decision to obtain such treatments. Again, in view of the extent of governmental regulation in this area, we cannot say that this determination is unreasonable.

The cases cited by petitioners are inapposite. Petitioners rely mainly on *Raladam Co. v. Federal Trade Commission,* 42 F.2d 430 (6th Cir. 1930), *aff'd,* 283 U.S. 643, 51 S.Ct. 587, 75 L.Ed. 1324 (1931); *Alberty v. Federal Trade Commission,* 86 U.S.App.D.C. 238, 182 F.2d 36, *cert. denied,* 340 U.S. 818, 71 S.Ct. 49, 95 L.Ed. 601 (1950), and *Federal Trade Commission v. Rhodes Pharmacal Co.,* 191 F.2d 744 (7th Cir. 1951).

*Raladam* was decided before the Commission's jurisdiction was extended in 1938. It relies heavily on the proposition, overturned by the 1938 amendment, that the Commission does not have jurisdiction to issue cease and desist orders to prevent deception of consumers.

We have previously noted that the *Alberty* decision dealt only with the question whether the advertisement involved was false under § 12 of the FTCA and not whether it was deceptive under the more comprehensive provisions of § 5. *Feil, supra,* 285 F.2d at 899. We also noted that one ground of decision was the failure of the FTC to make findings to support its order. *Id.* In this case, the Commission has made such findings.

*Rhodes* is distinguishable on several grounds. First, as in *Alberty,* the advertiser was charged only with false, and not deceptive, advertising. Second, the court was not reviewing final agency action, but a district court's denial of preliminary in-

---

11. Advertisements having the capacity to deceive are deceptive within the meaning of the FTCA; actual deception need not be shown. *Goodman v. Federal Trade Commission,* 244 F.2d 584, 602 (9th Cir. 1957). It is well settled that "[t]he Federal Trade Commission has the expertise to determine whether advertisements have the capacity to deceive or mislead the public. Consumer testimony, although sometimes helpful, is not essential." *Resort Car, supra,* 518 F.2d at 964; see *Colgate, supra,* 380 U.S. at 385, 391 2, 85 S.Ct. 1035.

junctive relief pending outcome of the agency proceedings. Third, the ground for the reversal was that the district court had applied an incorrect standard for determining when injunctive relief would be appropriate.

For the foregoing reasons, we hold that the Commission's determination that the petitioners' advertisements are deceptive in violation of § 5 of the FTCA is supported by substantial evidence on the record as a whole and is not arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law.

The Commission is authorized, and indeed required, to prevent such deceptive advertising by issuing a cease and desist order. 15 U.S.C. §§ 45(a)(2), (b).

Petitioners do not challenge the form or substance of the disclosures required by the Commission's order. The Commission has much discretion in fashioning an appropriate order. *Colgate, supra,* 380 U.S. at 392, 85 S.Ct. 1035. The order will be upheld unless it has no reasonable relation to the practices found to be unlawful, *Fed. Trade Comm'n v. Ruberoid Co.,* 343 U.S. 470, 473, 72 S.Ct. 800, 96 L.Ed. 1081 (1952), or is not sufficiently clear and precise that it may be understood by those against whom it is directed. *Cogate, supra,* 380 U.S. at 392, 85 S.Ct. 1035. Although it is somewhat broad, the order issued in this case meets these requirements.

Since we uphold the order as a means of preventing deceptive advertising, we express no opinion on the merits of petitioners' contentions that the advertisements are not false or unfair.

Petition denied and the Commission's order enforced.