**LITTON INDUSTRIES, INC. and Litton Systems, Inc., Petitioners,**

v.

**FEDERAL TRADE COMMISSION, Respondent.**

No. 81–7148.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 9, 1981.

Decided May 3, 1982.

**366**

J. Wallace Adair, Howrey & Simon, Washington, D. C., for petitioners.

Jerold D. Cummins, Deputy Asst. Gen. Counsel, Washington, D. C., argued, for respondent; Ernest J. Isenstadt, Howard E.

Shapiro, W. Dennis Cross, FTC, Washington, D. C., on brief.

Before SKOPIL, POOLE and CANBY, Circuit Judges.

SKOPIL, Circuit Judge:

## FACTS

Litton Industries, Inc. ("Litton") and Litton Systems, Inc. seek review of a final order of the Federal Trade Commission ("FTC") holding that certain microwave oven advertisements published by Litton Microwave Cooking Products ("LMCP") violated section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, and ordering petitioners to cease and desist from certain practices.

Litton Microwave Cooking Products is a division of Litton Systems. Litton Systems is a wholly-owned subsidiary of Litton Industries. LMCP manufactures and distributes microwave ovens.

Litton disseminated advertisements for microwave ovens from October 1976 to February 1977 and from August through October 1977. The ads were placed in trade and general publications. Local advertisements, based upon copy disseminated by Litton, were placed in 1976 and 1977.

The ads presented results of a survey of "independent microwave oven service technicians" indicating that 76% of the surveyed population "recommend Litton." The ads contained a chart showing percentage preference figures which revealed a strong preference for Litton.

The survey was devised for internal use. After seeing the results, Litton decided to advertise them. The survey was designed to elicit preferences from independent microwave oven service agencies, defined as agencies which serviced one or more brands of microwave ovens but did not sell microwave ovens and were not controlled by a manufacturer. Litton used only its own service agency lists. It had lists of two of its competitors, Sharp and Magic Chef. The survey was to be a census, questioning all independent service agencies, not a sample.

Litton knew that its service agency lists did not include the names of all its service agencies, but only those authorized to do warranty work. This excluded at least 100 agencies. One qualified technician at each agency was surveyed. Litton did not question whether that technician's opinion agreed with the opinions of other technicians at the agency. The Administrative Law Judge ("ALJ") held that Litton knew or should have known that its service agency lists included at least 52 servicing-dealers, and that Litton had reason to know that some of the survey respondents had insufficient experience with other brands to respond accurately.

In December 1976 the Federal Trade Commission questioned the ads. The ALJ held that Litton "showed a certain amount of cooperation with Commission staff in halting the advertisements and revising the copy thereof, [but] their cooperation was far from perfect." Litton published additional ads in January and February 1977 and revised ads from August through October 1977. The revised ads disclosed in very fine print the fact that its surveys included only "Litton-authorized" agencies. Litton continued to cooperate in the cost and dissemination of local ads placed by its dealers from September 1976 through February 1978.

## PROCEEDINGS BELOW

In 1979 the FTC issued a complaint charging Litton with unfair and deceptive advertising of microwave ovens. The complaint was later amended to include Litton Systems as a co-respondent. A hearing was conducted before an ALJ. The ALJ held that Litton violated 15 U.S.C. § 45 because it lacked a reasonable basis for making claims about preferences for its microwave ovens. Litton knew that its lists included servicing-dealers; that at least one-sixth of the universe of respondents was not contacted, and that this group might have dif-

ferent preferences; that agencies, not technicians, were surveyed; and that a number of the technicians indicated inadequate experience with other brands to make comparisons. These facts, plus Litton's failure to re-evaluate the surveys before converting them from internal use to advertisements, negated "both the 'reasonableness of the advertiser's action' and its 'good faith'".

The ALJ ordered Litton to cease and desist from making any representation, directly or by implication, about the qualities of its microwave ovens "unless and only to the extent that respondents possess and rely upon a reasonable basis for such representation at the time of its initial and each subsequent dissemination." He ordered Litton to retain documents used in connection with future market surveys and permit inspection by FTC staff on reasonable notice. The order addressed both Litton Industries and Litton Systems because Litton Industries directly oversaw LCMP's operations and because Litton Systems is a paper entity with no real separate identity.

The ALJ refused to specify a procedure governing conduct of future tests or surveys because such specificity would unduly restrict legitimate comparison advertising and the procedure proposed by the FTC staff ("complaint counsel") was not the best or only way to validate surveys or tests. The order covered only microwave ovens.

Complaint counsel appealed. Litton did not appeal nor cross-appeal. Litton opposed complaint counsel's appeal. Litton stated that the ALJ "reached a result with which respondents do not agree, but which they are willing to accept." It stated that the only possible disagreement was over relief, and the relief ordered by the ALJ "is the type normally considered appropriate by the Commission and the courts in such circumstances." The FTC denied Litton's motion and heard complaint counsel's appeal. Pursuant to 16 C.F.R. § 3.52(b)(3) (1981), complaint counsel specified the issues on appeal as whether the surveys contained more defects than the ALJ found, and whether a broader order was warranted.

The FTC's opinion states: "The principal question in this case, as it reaches the Commission, is what form of order should issue to prevent recurrence of deceptive advertising in which respondents have engaged." The FTC noted that the ALJ's findings "have not been appealed by respondents, and our own review yields no reason to disturb them." Although it was not necessary to decide the point, the FTC questioned the significance of Litton having contacted only one technician in each agency. As to the ALJ's order the FTC stated: "Respondents have not appealed from the order recommended by the ALJ, although they suggest in their Answer Brief to Complaint Counsel's appeal that only a 'narrowed' version of the ALJ's recommended order is appropriate." The FTC held that the ALJ's order, "so far as it goes, is appropriate."

The FTC refused to extend the order that Litton cease and desist from making claims with respect to its microwave ovens without adequate substantiation to all consumer products. It did extend the prohibition on misuse of survey results to all consumer products. The FTC further defined "reasonable basis" and "competent and reliable survey or tests". The FTC added three paragraphs elaborating on the sort of misrepresentations of survey or test results which were prohibited. Litton petitioned for review in this court.

## ISSUES

1. Does Litton's failure to appeal the ALJ's opinion and order to the FTC preclude it from doing so in this court?

2. Are the remedial provisions added by the FTC reasonably related to the violations found?

## DISCUSSION

I. Standard of Review.

 The FTC's findings of fact, "if supported by evidence, shall be conclusive." 15 U.S.C. § 45(c). This court requires " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *RSR Corp. v. FTC*, 602 F.2d

1317, 1320 (9th Cir. 1979), *cert. denied*, 445 U.S. 927, 100 S.Ct. 1313, 63 L.Ed.2d 760 (1980) (quoting *Consolo v. Federal Maritime Commission*, 383 U.S. 607, 620, 86 S.Ct. 1018, 1026, 16 L.Ed.2d 131 (1966)). This test applies regardless whether the FTC agrees with the ALJ. *Thiret v. FTC*, 512 F.2d 176, 179 (10th Cir. 1975). A reviewing court may examine the FTC's findings more closely where they differ from those of the ALJ. *Id.; American Cyanamid Co. v. FTC*, 363 F.2d 757, 772–73 (6th Cir. 1966). *See also ITT Continental Baking Co. v. FTC*, 532 F.2d 207, 219 (2d Cir. 1976).

■ Courts give great weight to the FTC's legal conclusions in deceptive advertising cases, since such cases "necessarily require 'inference and pragmatic judgment'." *Resort Car Rental System, Inc. v. FTC*, 518 F.2d 962, 963 (9th Cir.), *cert. denied*, 423 U.S. 827, 96 S.Ct. 41, 46 L.Ed.2d 42 (1975) (quoting *FTC v. Colgate-Palmolive Co.*, 380 U.S. 374, 385, 85 S.Ct. 1035, 1042, 13 L.Ed.2d 904 (1965)). The need for deference results "in part from the statutory scheme and in part from the weight of accumulated agency expertise." *Simeon Management Corp. v. FTC*, 579 F.2d 1137, 1145 (9th Cir. 1978). *See also FTC v. Colgate-Palmolive Co.*, 380 U.S. at 385, 85 S.Ct. at 1042. The statute's general language requires the FTC to apply it to particular situations. Determining whether an advertisement is deceptive draws upon the FTC's familiarity with the public's expectations. *Simeon Management Corp. v. FTC*, 579 F.2d at 1145.

■ The Commission also possesses expertise regarding what remedy is necessary to eliminate deceptive trade practices. "It has wide latitude for judgment and the courts will not interfere except where the remedy selected has no reasonable relation to the unlawful practices found to exist." *Jacob Siegel Co. v. FTC*, 327 U.S. 608, 612–13, 66 S.Ct. 758, 760–761, 90 L.Ed. 888 (1946). *See Floersheim v. FTC*, 411 F.2d 874, 878 (9th Cir. 1969), *cert. denied*, 396 U.S. 1002, 90 S.Ct. 551, 124 L.Ed.2d 494 (1970); *Encyclopaedia Britannica, Inc. v. FTC*, 605 F.2d 964, 970 (7th Cir. 1979), *cert.*

*denied*, 445 U.S. 934, 100 S.Ct. 1329, 63 L.Ed.2d 90 (1980); *Warner-Lambert Co. v. FTC*, 562 F.2d 749, 762 (D.C.Cir.1977), *cert. denied*, 435 U.S. 950, 98 S.Ct. 1575, 55 L.Ed.2d 800 (1978). The FTC is not limited to prohibiting the precise misrepresentation that occurred in the past. *FTC v. Colgate-Palmolive Co.*, 380 U.S. at 395, 85 S.Ct. at 1048; *Trans World Accounts, Inc. v. FTC*, 594 F.2d 212, 215 (9th Cir. 1979). Some vagueness is inherent in FTC orders, but the orders should be "as specific as the circumstances will permit." *FTC v. Colgate-Palmolive Co.*, 380 U.S. at 393, 85 S.Ct. at 1047. Orders must be sufficiently precise to "avoid raising serious questions as to their meaning and application." *FTC v. Henry Broch & Co.*, 368 U.S. 360, 367–68, 82 S.Ct. 431, 435–436, 7 L.Ed.2d 353 (1962); *Trans World Accounts, Inc. v. FTC*, 594 F.2d at 216.

## II. Failure to Appeal to the FTC.

■ In general, absent exceptional circumstances, a reviewing court will not consider contentions not raised before the administrative agency at the appropriate time. *See, e.g., United States v. L.A. Tucker Truck Lines*, 344 U.S. 33, 36–37, 73 S.Ct. 67, 68–69, 97 L.Ed. 54 (1952); *Duncanson-Harrelson Co. v. Director, Office of Workers' Compensation Programs*, 644 F.2d 827, 832 (9th Cir. 1981).

5 U.S.C. § 704 provides that, except as otherwise expressly required by statute, agency action is judicially reviewable absent an appeal to a superior agency authority "unless the agency otherwise requires by rule and provides that the action meanwhile is inoperative". *See also United States v. Consolidated Mines & Smelting Co.*, 455 F.2d 432, 439–40 (9th Cir. 1971); K. Davis, *Administrative Law Treatise* §§ 20.00–3, 20.11 (Supp.1980).

This court has created additional exceptions where exhaustion of administrative remedies is not statutorily mandated. In determining whether to require exhaustion, this court balances the agency's interests "in applying its expertise, correcting its own errors, making a proper record, enjoy-

ing appropriate independence of decision and maintaining an administrative process free from deliberate flouting, and the interests of private parties in finding adequate redress for their grievances." *Montgomery v. Rumsfeld*, 572 F.2d 250, 253 (9th Cir. 1978), *quoted in Stratman v. Watt*, 656 F.2d 1321, 1326 (9th Cir. 1981).

No statute expressly requires an appeal to the FTC. Yet it is clear that courts review "the order of the Commission." 15 U.S.C. § 45(c). The ALJ's opinion becomes the decision of the FTC 30 days after service on the parties unless a party appeals to the FTC or the FTC itself decides to review the case. 16 C.F.R. § 3.51(a) (1981).

■ Balancing the factors here suggests that Litton waived its contentions on the merits by failing to raise them before the FTC. This court defers to the expertise of the FTC, not the ALJ. The FTC has great expertise in determining whether ads are misleading. Permitting judicial review of questions raised before the ALJ but not the FTC could encourage largescale flouting of the administrative process. Permitting judicial review at this stage is not necessary, since Litton could easily have appealed or cross-appealed to the FTC and obtained judicial review of that decision. *See Porter & Dietsch, Inc. v. FTC*, 605 F.2d 294, 306 n.13 (7th Cir. 1979), *cert. denied*, 445 U.S. 950, 100 S.Ct. 1597, 63 L.Ed.2d 784 (1980).

Where the agency considered the party's contentions, whether or not procedural rules were strictly followed, this court may consider them. *See Getty Oil Co. v. Andrus*, 607 F.2d 253, 256 (9th Cir. 1979); *Chrysler Corp. v. FTC*, 561 F.2d 357, 364 n.7 (D.C.Cir.1977). Here the parties and the FTC addressed the merits only to determine what sort of remedy was warranted. Everyone assumed there had been a violation, the gravity of which was disputed.

Because balancing the factors points toward requiring exhaustion, and because Litton did not appeal the merits to the FTC, we do not consider them.

III. The Remedial Order.

Litton contends that the FTC improperly prohibited it from misusing survey results covering all consumer products, rather than just microwave ovens. Litton argues that the other provisions added to the order by the FTC bear no reasonable relationship to the record, and may also violate the first amendment. Litton challenges in particular the extension of the order to cover tests, the requirement that surveys be taken from "a census or a representative sample", the prohibition of misrepresentation of survey and test results and procedures, the requirement that surveys or tests be conducted by "persons qualified to do so" and that any performance characteristics advertised be substantiated. Litton also argues that the terms "reasonable basis" and "representative sample" are unduly vague.

A. Propriety of a multi-products order.

■ The FTC is permitted "to frame its order broadly enough to prevent respondents from engaging in similarly illegal practices in future advertisements." *FTC v. Colgate-Palmolive Co.*, 380 U.S. at 395, 85 S.Ct. at 1048. The FTC's authority includes power to issue orders "encompassing all products or all products in a broad category, based on violations involving only a single product or group of products." *ITT Continental Baking Co. v. FTC*, 532 F.2d at 223 (collecting cases). Coverage of all products in a broad category is a means of "fencing-in" one who has violated the statute. Fencing-in provisions serve to "close all roads to the prohibited goal, so that [the FTC's] order may not be by-passed with impunity." *FTC v. Ruberoid Co.*, 343 U.S. 470, 473, 72 S.Ct. 800, 803, 96 L.Ed. 1081 (1952) (footnote omitted). Fencing-in provisions must bear a "reasonable relation to the unlawful practices found to exist." *FTC v. Colgate-Palmolive Co.*, 380 U.S. at 394–95, 85 S.Ct. at 1047–1048 (footnote omitted).

■ Because fencing-in provisions are prophylactic, the ultimate question is the likelihood of the petitioner committing the sort of unfair practices they prohibit. Accordingly, "[a]mong the circumstances

which should be considered in evaluating the relation between the order and the unlawful practice are whether the respondents acted in blatant and utter disregard of the law, and whether they had a history of engaging in unfair trade practices." *Standard Oil Co. v. FTC*, 577 F.2d 653, 662 (9th Cir. 1978). We also consider whether the violations involved "a technique of deception that easily could be transferred to an advertising campaign for some other product". *Id.* at 663. *Accord, ITT Continental Baking Co. v. FTC*, 532 F.2d at 222. A multi-products order may be appropriate even where a violator manufactures only one product, if it is continually marketing new products and can introduce them comparatively cheaply. *Porter & Dietsch, Inc. v. FTC*, 605 F.2d at 305.

▆ Multi-products orders should be used with caution "because they alter the scheme of penalties and enforcement procedures defined by the Act". *Standard Oil Co. v. FTC*, 577 F.2d at 661. Violations of a cease and desist order are heard in the district courts, rather than before the FTC. A company alleged to have violated such an order is therefore not entitled to a full hearing before the FTC. *Id.* Of course the propriety of a multi-products order "depends upon the specific circumstances of the case". *FTC v. Colgate-Palmolive Co., supra*, 380 U.S. at 394, 85 S.Ct. at 1047–1048.

The FTC ordered that Litton:

"in connection with the advertising for sale, sale, or distribution of microwave ovens (either for commercial or consumer use) and any other product normally sold to members of the general public for their personal or household use in or affecting commerce as 'commerce' is defined in the Federal Trade Commission Act, do cease and desist from:

1. Misrepresenting in any manner, directly or by implication, the purpose, sample, content, reliability, results, or conclusions of any survey or test.
2. Advertising the results of a survey unless the respondents in such survey are a census or a representative sample of the population referred to in the advertisement, directly or by implication. A representative sample need not be a probability sample so long as when the ad is first disseminated respondents have a reasonable basis to expect the sampling method used would not produce biased results.
3. Representing, directly or by implication, that experts were surveyed, unless reasonable care was taken to insure that the survey respondents possessed sufficient expertise to qualify as respondents for the survey and to answer the survey questions. For purposes of this order, an 'expert' is an individual, group or institution held out as possessing, as a result of experience, study or training, knowledge of a particular subject, which knowledge is superior to that generally acquired by ordinary individuals."

▆ The FTC held that a multi-products order was appropriate because the violation was not inadvertent, was national in scope, and continued after the ads were questioned by FTC staff. Misuse of survey results "has considerable potential to deceive and is a technique that may be applied to a variety of products." Although Litton does not produce home appliances other than microwave ovens, it has produced other consumer products in the past, the advertising of which "might lend itself to the misuse of test results." Because Litton manufactures few consumer products, the burden of a multi-products order would be small. The FTC conceded that Litton modified its ads "when apprised of their shortcomings" and that the violations here did not "rise to the seriousness of those in [*Sears, Roebuck & Co.*, 95 FTC 406 (1980), *petition for review pending*, No. 80–7368 (9th Cir. argued June 8, 1981) ]".

We find the limited multi-products order approved by the FTC appropriate in this case. The multi-products order is actually quite narrow. Except for its reference to tests, discussed below, it refers only to misrepresentation of survey results, the precise

violation found here. *See Jay Norris, Inc. v. FTC*, 598 F.2d 1244, 1250 (2d Cir.), *cert. denied*, 444 U.S. 980, 100 S.Ct. 481, 62 L.Ed.2d 406 (1979). Litton's advertisements were disseminated throughout the country over a substantial period of time. The violation was not an isolated instance. *See id.* Litton had ample reason to know that its surveys were flawed before it advertised them. Its offense was not unintentional. *Compare Chrysler Corp. v. FTC*, 561 F.2d at 364. The violation found here, misuse of survey results, could easily be transferred to other products. It did not depend upon the specific subject matter of any product. *Compare Standard Oil Co. v. FTC, supra*, 577 F.2d at 663 *and Grove Laboratories v. FTC*, 418 F.2d 489, 496–97 (5th Cir. 1969) *and American Home Products Corp. v. FTC*, 402 F.2d 232, 237 (6th Cir. 1968) *with ITT Continental Baking Co. v. FTC*, 532 F.2d at 222–23 & n.24. The relative absence of internal evaluation before advertising tends to show that a broader order overseeing Litton's practices is warranted. *Compare Standard Oil Co. v. FTC*, 577 F.2d at 660, 663 *with Tashof v. FTC*, 437 F.2d 707, 715 (D.C.Cir.1970). This is not a case where the proscribed practice would be legal in connection with other products nor will this order reach conduct specifically exonerated by the FTC in this proceeding. *Compare National Dairy Products Corp. v. FTC*, 412 F.2d 605, 624 (7th Cir. 1969) *with ITT Continental Baking Co. v. FTC*, 532 F.2d at 222–23 & n.24. Litton's violation was relatively large-scale, not isolated nor unintentional, and easily transferable to other products. There is a reasonable relation between that violation and the order proscribing misuse of survey results regarding other consumer products.

Our decision is not inconsistent with *TRW, Inc. v. FTC*, 647 F.2d 942, 954 (9th Cir. 1981). That case construed section 8 of the Clayton Act, 15 U.S.C. § 19. It did not rely upon cases construing section 5 of the FTC Act, 15 U.S.C. § 45, which gives the FTC broad discretion in eliminating deceptive trade practices. *See, e.g., FTC v. National Lead Co.*, 352 U.S. 419, 428–30, 77 S.Ct. 502, 508–509, 1 L.Ed.2d 438 (1957).

### B. Prohibition of misuse of tests.

 The FTC added misrepresentations of test as well as survey results to the ALJ's order. The FTC stated that Litton's expert Dr. Wilkie "endorsed the general concept of a prohibition on misrepresentations of survey or test results as a remedy" instead of the provisions proposed by complaint counsel. We have found nothing in the record relating to test results. Tests, which ascertain scientifically product specifications and quality, are different from surveys, which measure popular opinion. Dr. Wilkie endorsed the concept of a general prohibition rather than the specific provisions suggested. He did not suggest inclusion of tests, where tests had not previously been discussed. Accordingly, we will delete that part of the order referring to misuse of test results.

### C. Use of representative samples.

 The FTC prohibited Litton from advertising the results of a survey unless the respondents were "a census or a representative sample of the population referred to in the advertisement." It defined a representative sample as "a sample that has been selected in a manner which permits projection of results from the sample to the universe from which it is drawn." The FTC added this provision to meet Litton's objection that a "representative sample" might be construed in the strict statistical sense as a "probability sample." The former states a more lenient standard which would "permit Litton to employ, for example, a properly selected 'judgment sample' or 'convenience sample.'"

This provision speaks to one of the forms of misrepresentation found here. The survey population was neither a census nor a representative sample. This provision states the terms on which Litton must conduct surveys in order to use them in advertising. The term "representative sample" is defined in a way which gives Litton a relatively clear idea of what is required. Because it is "as specific as the circum-

stances will permit," *FTC v. Colgate-Palmolive Co.*, 380 U.S. at 393, 85 S.Ct. at 1047, we will enforce it.

### D. Misrepresentation of purpose or sample of surveys.

■ The FTC expanded the ALJ's order to prohibit misrepresenting "the purpose, sample, content, reliability, results, or conclusions of any survey or test." This prohibition, although broader than the facts of this case, is a reasonable "fencing-in" provision. Because of the defects in the population chosen and the questions asked, the survey's content was unreliable. The FTC was concerned about knowing misuse of survey data. Its order proscribed various types of survey abuses. Once the order is limited to surveys and excludes tests, it is not overbroad. There is a reasonable relation between this proscribed conduct and the types of misuse of survey results found.

### E. Conduct by persons qualified to do so.

■ Litton objects to the requirement that surveys or tests be conducted by "persons qualified to do so". For reasons already stated, we delete the reference to tests. As to surveys, the provision of the order is reasonable. The FTC added this language "to give greater specificity to the term 'reasonable basis', and not to cast doubt upon the qualifications of those who conducted the Litton surveys in this case." This requirement is a reasonable fencing-in provision which explains what must be done before survey results are used in advertising. The requirement is not a highly technical one. The FTC recognized that "the degree of experience and expertise required of those who design and conduct a survey or test must inevitably depend upon the circumstances and the nature of the survey or test itself."

### F. Misrepresentation of performance characteristics.

■ Litton objects to the requirement that it refrain from representing that its microwave ovens are "able to perform in any respect, or [have] any characteristic, feature, attribute, or benefit" unless it has a reasonable basis for making such a representation. Litton argues that this case involved only surveys and not performance characteristics. This provision was included in the ALJ's order. Litton did not object to it before the FTC. Accordingly, Litton may not do so in this court.

### G. Vagueness of reasonable basis and representative sample.

■ Litton contends that the terms "reasonable basis" and "representative sample" are unduly vague. Litton did not object to the ALJ's use of the term "reasonable basis". The FTC stated that "absolute precision in this area is not possible, and we note that respondents themselves have not objected to the ALJ's proposed order, which requires only a 'reasonable basis' and is, therefore, even less precise than the order that complaint counsel would impose." The FTC's addition clarifies the meaning of "reasonable basis". The term is as clear as the circumstances will permit and will be enforced. The same is true of "representative sample". It has been defined in a non-technical way and its meaning has been explained. It too is as specific as possible in the circumstances.

### H. The order and the first amendment.

■ Commercial expression is protected only if it concerns lawful activity and is not misleading. *Central Hudson Gas & Electric Corp. v. Public Service Commission*, 447 U.S. 557, 566, 100 S.Ct. 2343, 2351, 65 L.Ed.2d 341 (1980). Even truthful commercial speech can be regulated if the government's interest in regulation is substantial and if the regulation directly advances that interest and is not more extensive than necessary. *Id.* "Any remedy formulated by the FTC that is *reasonably necessary* to the prevention of future violations does not impinge upon constitutionally protected commercial speech." *United States v. Reader's Digest Ass'n*, 662 F.2d 955 at 965 (3d Cir. 1981) (emphasis in original). Because the provisions in the FTC's order are reasonably necessary to the prevention

of future violations, once the provisions regarding tests are stricken, the order does not violate the first amendment.

## CONCLUSION

Litton may not argue that it did not violate 15 U.S.C. § 45. It did not raise this point before the FTC. Balancing the relevant factors suggests that it should not be permitted to do so in this court. The FTC's order is generally a reasonable means of preventing repetition of the violations found. The order is modified to involve only surveys and not tests. The FTC's order is ENFORCED AS MODIFIED.