[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff brings this action pursuant to Conn. Gen. Stat.42-110a et seq., the Connecticut Unfair Trade Practices Act (CUTPA). He claims statutory damages, actual damages, punitive damages, recission and other appropriate equitable relief.
On November 2, 1987, the plaintiff test drove a 1986 Buick Riviera owned by the defendant. The plaintiff noted noisy brakes and the oil light coming on. After assurances from the salesman that these conditions would be corrected before delivery of the car, the plaintiff paid a $500 deposit on the car. On November 9, 1987, the sale of the car was completed. The automobile had been purchased by the defendant at an auction, and had been a lease vehicle. The plaintiff was not told of this aspect of the car's history, rather, he discovered it by getting a title search from the Connecticut Department of Motor Vehicles.
The plaintiff received certain warranties with his purchase. Approximately two weeks after purchase, the car's brakes were making a loud grinding noise. The plaintiff has testified that the defendant refused to take the car in for service, and that he had to take the car to Midas for repair. On January 29, 1988, the car would not start and plaintiff had the vehicle towed to the defendant's business for repair. The car was returned to the plaintiff approximately three months later after extensive repair by Attwood Buick (the engine was replaced). The plaintiff continued to have problems with the car for which he sought repairs at Attwood Buick and Jack Miller Buick, because, he testified, McDermott had been uncooperative about repair. When, on September 6, 1988, the car did not start, the plaintiff had the car towed to Attwood Buick. He called GMAC and told them he would not keep the car. The car was repossessed and resold.
CUTPA affords consumer protection to individuals and is designed to be more flexible and afford more complete relief than CT Page 2744 the common law. Hinchcliff v. American Motors Corp., 184 Conn. 607
(1981). The legislature has directed that CUTPA "be remedial and be so construed." Conn. Gen. Stat. 42-110 (b)(d). The statute must therefore be liberally construed.
The plaintiff urges that the court find that the defendant's failure to inform the plaintiff of the car's history as a leased vehicle is an unfair trade practice.
Reg. Stat. Agencies 42-110b-28 regulates the standards for advertising and selling automobiles in Connecticut. In pertinent part it provides that:
 It shall be an unfair or deceptive act or practice for a new car dealer or a used car dealer to advertise any motor vehicle for sale which is not new unless the advertisement clearly and conspicuously discloses: (A) that the vehicle is used and (B) a designation of the vehicle as a demonstrator, taxicab, police car, leased or rental vehicle, if the dealer knows or in the exercise of reasonable care, should know that the vehicle was previously so used.
This section, since it applies to advertising, protects the public in general, and certainly prospective purchasers of automobiles. It is clear from the evidence that the defendant knew or in the exercise of reasonable care should have known that the car was previously leased or rented. The acquisition documents show the car to have been owned by a leasing company and designated as rental. The plaintiff, as an identified purchaser inside the dealership, is entitled to know that which the general public and all prospective purchasers are entitled to know. It makes no sense and is unfair to withhold from him information required to be disclosed in advertisements to the public.
Additionally, an automobile's prior use might be critical in the decision to buy. Here the plaintiff testified that he would not have purchased the vehicle if he had known its previous ownership or use.
The standard established by the Federal Trade Commission (F.T.C.) and the federal courts to determine if an act or practice is deceptive is whether it has a tendency or capacity to deceive. TransWorld Accounts, Inc. v. F.T.C., 594 F.2d 212, 214 (9th Cir. 1979); Beneficial Corp. v. F.T.C., 542 F.2d 611, 617 (3d Cir. 1976). See also Covenant Radio Corp. v. Ten Eighty Corp.,35 Conn. Sup. 1 (1977).
CUTPA directs Connecticut courts to be guided by interpretations CT Page 2745 given to the Federal Trade Commission Act by the F.T.C. and federal courts.
Both the F.T.C. and federal courts have ruled that a failure to disclose material facts, including unfavorable facts, which could reasonably influence a purchaser's decision to buy, violates 5 of the Federal Trade Commission Act. Warner-Lambert Co. v. F.T.C., 562 F.2d 749, 759 (D.C. Cir. 1977); Simeon Management Corp. v. F.T.C., 579 F.2d 1137, 1145 (9th Cir. 1978).
The disclosure of a car's history is required in advertisement because that information is material and may well influence a purchaser's decision. Therefore, the court holds that the defendant's failure to disclose to the plaintiff that the vehicle had been owned by a leasing company and designated rental on its acquisition documents was an unfair trade practice.
The court also finds that the defendant failed to honor the warranty required by 42-221. The oil light (which may signal an engine problem) and brake problem were reported to the defendant within 60 days of the sale. There has been no evidence of accident or misuse. Therefore, Conn. Gen. Stat. 42-222 has been violated. In addition, the defendant has failed to comply with Conn. Gen. Stat. 42-225. The plaintiff's testimony that the car salesman promised to fix the brakes and whatever was causing the oil light to come on has not been rebutted. This statement was not made in compliance with subsection (b) of this statute.
These two violations, taken together, are again sufficient to constitute an unfair or deceptive trade practice.
The plaintiff should be returned to the position in which he would have been had the defendant disclosed the car's true history. The defendant should pay the plaintiff $5,432.16 for his out-of-pocket losses, $5,000.00 for the damage to his credit standing, and the court awards punitive damages in the amount of $10,000.00 and attorneys fees and costs in the amount of $5,059.41. The judgment of damages is payable together with interest thereon due under Practice Book 350.
BY THE COURT: GORDON, JUDGE